A94A2630. IN THE INTEREST OF W. J. G., a child.
(453 SE2d 768)

BEASLEY, Chief Judge.

The juvenile court terminated the parental rights of W. J. G.'s natural parents. The mother alone appeals, on both procedural and substantive grounds. The child has been in the temporary custody of the Georgia Department of Human Resources since he was twenty-two months old and he is now nearly age six.

" 'The statutory criteria for the termination of parental rights is the two-step procedure of OCGA § 15-11-81 (a). First the court determines whether there is clear and convincing evidence of parental misconduct or inability. Second the court considers whether termination is in the best interest of the child. (Cit.) Parental misconduct is determined by finding: 1) the child is deprived; 2) lack of proper parental care or control is the cause of the deprivation; 3) such deprivation is likely to continue or will not be remedied; 4) continued deprivation is likely to cause serious physical, mental, emotional or moral harm to the child. OCGA § 15-11-81 (b) (4) (A). Among the factors which may be considered with regard to a child lacking proper parental care or control are: medically verifiable deficiency of the parent's mental or emotional health of such duration or nature as to render the parent unable to provide adequately for the child's needs; conviction of a felony and imprisonment which has a demonstrable negative effect on the quality of the parent-child relation; (and) physical, mental or emotional neglect of the child. OCGA § 15-11-81 (b) (4) (B). . . .

" 'The standard of appellate review where a parent's rights to his child have been severed is " 'whether after reviewing the evidence in

the light most favorable to the appellee [Department], any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost.' " [Cit.]' [Cit.] 'The factfinding and weighing of evidence is to be done in the trial court under the clear and convincing evidence test. The reviewing court is to defer to the lower court in the area of factfinding and should affirm unless the appellate standard of review . . . is not met.' [Cit.]" *In the Interest of B. P.*, 207 Ga. App. 242, 243 (427 SE2d 593) (1993).

The evidence supporting termination showed the following. At age 14, appellant bore a daughter whom she first put in a children's home and later placed in her grandmother's care. She married W. J. G.'s father at age sixteen, when she was five months pregnant with W. J. G. The family settled in Columbus, Georgia. In late 1989, when the baby was not yet a year old, appellant left him with her husband and went to Louisiana.

The Department received numerous complaints of neglect with regard to the father's care, including that the home was dirty, that the father was drinking a lot, and that the child had not received any immunizations. A Department caseworker worked with the father for several months. In October 1990, when W. J. G. was 22 months old, he came into the Department's custody after the father left him with a babysitter one evening and was arrested the following morning for carrying a concealed weapon, public drunkenness and contributing to the delinquency of a minor. At that time, the Department was unaware of appellant's whereabouts.

An investigation and juvenile court hearing ensued, after which a consent order issued on October 29, 1990, requiring that W. J. G.'s custody remain with the Department for a period of 18 months or until the father was released from jail, had disposed of all charges pending against him in Georgia and Louisiana, and made application to the court for return of custody; the Department was to place the child with the father's first cousin until further order of the court; the father agreed to seek counseling for alcohol abuse, a divorce from appellant whose address was unknown, and permanent legal custody. On November 21, a case plan for reunification of the child with his parents was developed even though appellant's whereabouts were still unknown.

At least by January 1991, appellant learned that W. J. G. had been placed in the Department's custody and was apprised of the case plan for reunification with her child. The father's cousins who had physical custody of the boy moved to Louisiana. In March they decided they could no longer care for him, so he was returned to Georgia and placed in a foster home.

Appellant attended a six-month panel review in May and agreed

to comply with the requirements of a case plan to work towards reunification with her son. The case plan, which was subsequently court ordered, required that the father resolve his outstanding criminal legal problems, that he get treatment for alcoholism, and that both parents attend parenting skills classes and pay $10 per month child support. Appellant requested that a home evaluation be completed on her home with her maternal grandmother in Louisiana for possible placement. The Department arranged for it and also for the parents to schedule regular visits with W. J. G. The home evaluation was unfavorable. Both parents completely failed to comply with the agreed case plan. No regular visits were scheduled and the only visitation occurred in early 1991 when the parents saw the child once or twice at a relative's home. By the time of the hearing, neither parent had seen the child again.

Both parents were notified of a panel review of the case plan in December 1991, but neither one attended. At that time the goal became termination of parental rights and the parents were so notified. In January 1992, appellant wrote to the Department of Family & Children Services objecting to her son being "put up for adoption." In response, the Department notified appellant of the case plan requirements for reunification and of an extension of custody hearing in April. Although it was stressed that her attendance was critical, she was absent. The court determined that the parents had failed to follow the provisions of the previous court order and that they had not visited with their son in over one year. The previous requirements for the parents were extended and custody in the Department was continued for another two years. The prior support order was modified to require each parent to pay $10 per week towards support. None was ever received from appellant. Subsequent panel reviews were conducted in June and December of both 1992 and 1993. Appellant was notified of each review and indicated that she would attend the one in June 1993. She failed to attend any of them.

A psychologist who evaluated appellant testified that she was depressed and had difficulty handling stress and that this plus immaturity made it likely for her to have problems handling daily living. The psychologist opined that in regard to caring for W. J. G., appellant might let things go until "they got in a crisis state."

At the termination hearing, the caseworker testified that W. J. G. had bonded with the foster family with whom he had resided for three years, that there was no bonding between the child and appellant, that the child did not even know the appellant, and that appellant had not seen him in three years. She has remarried, has another child and resides in Louisiana.

1. Appellant contends that the juvenile court erred in exercising jurisdiction over her in the termination hearing because the Depart-

ment failed to make a substantial effort to locate her and because there was no service of process for the initial deprivation action.

Appellant by her own conduct waived any service of summons of the Department's initial action, which culminated in the October 1990 consent order placing W. J. G.'s custody with the Department. First, she voluntarily absented herself from the family's home in Georgia and her whereabouts became unknown. Although she claimed her husband was hiding the child from her, she admittedly made no effort to contact authorities to help her locate him. When appellant's husband was arrested, there was no caregiver at all for W. J. G. and the Department had to intervene. The Department's petition before the court was proper. See *Cain v. Dept. of Human Resources*, 166 Ga. App. 801, 803 (3) (305 SE2d 492) (1983). Compare *In the Interest of W. M. F.*, 180 Ga. App. 397, 398 (2) (349 SE2d 265) (1986), and *McBurrough v. Dept. of Human Resources*, 150 Ga. App. 130, 131 (2) (3) (257 SE2d 35) (1979), in which there was no evidence that the appellants purposely absented themselves from the court's jurisdiction or that personal service could not have been accomplished.

Second, even as to a deprivation hearing, a party (other than the child) may waive service of summons by voluntary appearance. OCGA § 15-11-26 (f). Whether the Department could or should have taken further measures to attempt personal service of the initial petition on appellant, the validity of the present termination proceeding is not affected. When appellant's whereabouts became known to the Department, she was served with notice of each review and subsequent hearing, including the termination hearing. In fact, the Department assisted in obtaining an attorney to represent her. Under these circumstances, appellant waived any objection to service of process of the initial deprivation proceeding.

2. Appellant next contends that the court erred in finding that W. J. G. was deprived as defined in OCGA § 15-11-2 (8). She argues that the initial deprivation was based on her ex-husband's incarceration and that there is not clear and convincing evidence of the child's present deprivation attributable to her.

First, the appellant did not appeal the initial finding that the child was deprived, so she is bound by that determination. *In the Interest of B. P.*, supra at 244. Second, there was clear and convincing evidence that after she left her home in Georgia in 1990, she failed to communicate with or see the child in any significant way or in any manner provide care or support for him. She only sporadically made an outward show of interest in regard to her son. These circumstances constituted abandonment and rendered the child deprived, as defined by OCGA § 15-11-2 (8) (A) & (C).

3. Appellant contends there was no statutory basis under OCGA § 15-11-81 to terminate her parental rights. To the contrary, the evi-

dence viewed in favor of the Department satisfies the statutory bases of OCGA § 15-11-81 (b) (2), (3) & (4) (A).

4. The next error claimed is that the court failed to find by clear and convincing evidence that W. J. G.'s deprivation was likely to continue or would not likely be remedied and that the continued deprivation would cause or was likely to cause serious harm to the child.

The juvenile court in its order expressly found that W. J. G. is "deprived as defined in Code Section OCGA § 15-11-2" and that in regard to appellant, "there is clear and convincing evidence of parental misconduct and inability." The evidence is supportive. See Division 3, supra. Further, there is evidence to a "clear and convincing" degree that, if the mother is given custody, deprivation "is likely to continue or will not likely be remedied; and [t]he continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child." The trial court found that placement with appellant now "would be destructive to the child." The additional statutory findings required under OCGA § 15-11-81 (b) (4) (A) (iii, iv) were sufficiently made and are nearly self-evident from the order as a whole. It is unnecessary to remand the case for further findings of fact and conclusions of law, for a new judgment to be entered, and for another appeal to be taken, because the result is inevitable and the child's permanent status need not, and should not, be delayed. Compare *In the Interest of M. H. F.*, 201 Ga. App. 56, 57 (410 SE2d 167) (1991).

Although appellant claims that her new situation in Louisiana with her remarriage, birth of another child, and steady employment enables her to now provide W. J. G. with a suitable home, the court found that to take the child out of the secure placement in which he now is doing well would be "destructive" and not in his best interest, not merely fail to remedy the deprivation of care and support exhibited by appellant over the past three years and even while the petition was pending. As the court pointed out, there was adequate opportunity for rehabilitation, even through plans, but it was never accomplished. "[T]here is no indication but the promise to suggest hope of improvement." *In re G. M. N.*, 183 Ga. App. 458, 461 (359 SE2d 217) (1987). The court also found that "[t]here are no approved relatives available to take responsibility for the child." See *In the Interest of P. F. J.*, 174 Ga. App. 47 (329 SE2d 194) (1985).

5. Finally, appellant contends that the court erred in terminating her parental rights without "ensuring a thorough [sic] investigation by [the Department] of all other possible alternatives," that the Department has refused to consider additional placements for the boy. The record, however, does support the juvenile court's conclusion that the Department "has made an exhaustive and thorough search for a suitable family member in attempting to place the child with his fam-

ily [and that] [t]here is no such suitable family member."
*Judgment affirmed. Andrews and Johnson, JJ., concur.*

DECIDED JANUARY 30, 1995.

*Anne M. Couch,* for appellant.
*Michael J. Bowers, Attorney General, William C. Joy, Senior Assistant Attorney General, Teresa E. Lazzaroni, Assistant Attorney General, Edgar J. Perkerson III, Julie A. Prokopovich,* for appellee.