A95A0092. IN THE INTEREST OF R. P., a child.
(456 SE2d 107)

BIRDSONG, Presiding Judge.

Timitra Nicole Parker appeals the order of the juvenile court terminating her parental rights.

Appellant's child, R. P., was five years old at the time of the petition for termination. His putative father had raped his mother who, as a result, conceived and gave birth to R. P. The putative father was incarcerated at Rivers Correctional Institution for aggravated child molestation and statutory rape but apparently was released by the time of the termination hearing; he did not file a petition to legitimate R. P. after receiving notice of the termination of parental rights proceeding. On June 22, 1989, R. P. was adjudicated a deprived child, pursuant to OCGA § 15-11-2; this determination was extended on May 20, 1991 and again on May 17, 1993. Petition to terminate parental rights was filed on February 10, 1994. Following the hearing on June 29, 1994, the juvenile court terminated the parental rights of both the mother and the putative father; only appellant mother has appealed.

The sole enumeration filed is that the juvenile court violated appellant's right to due process of law under the Fifth and Fourteenth Amendments to the United States Constitution by terminating her parental rights without clear and convincing evidence. *Held*:

1. "The appropriate standard of appellate review in a case of this sort is whether after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody were lost. The reviewing court is to defer to the lower court in the area of factfinding and should affirm unless the appellate standard of review is not met." (Citations and punctuation omitted.) *In the Interest of S. K. L.*, 199 Ga. App. 731, 734 (1) (405 SE2d 903). An appellate court determines sufficiency of the evidence; it does not

weigh evidence or determine witness credibility. *In the Interest of E. P. N.*, 193 Ga. App. 742, 748 (2) (c) (388 SE2d 903).

2. "Pursuant to OCGA § 15-11-81 (a) there exists a two-step process in considering the propriety of termination of parental rights. First, the court shall determine whether there exists clear and convincing evidence of parental misconduct or inability; secondly, if such clear and convincing evidence exists, the court shall then consider whether termination of parental rights is in the best interest of the child, 'after considering the physical, *mental, emotional*, and *moral* condition and needs of the child . . . including the need for a secure and stable home.' (Emphasis supplied.) OCGA § 15-11-81 (a). With certain exceptions [not applicable to this appellant's appeal], the court may terminate parental rights if the court determines parental misconduct or inability by finding that: the child is a deprived child within the meaning of OCGA § 15-11-2 (that finding was made previously and was not appealed in this case); the lack of proper parental care or control by the parents in question is the cause of the child's status as deprived; such cause of deprivation is likely to continue *or* will not likely be remedied; and the 'continued deprivation will cause or is likely to cause serious physical, *mental, emotional*, or *moral* harm to the child.' (Emphasis supplied.) OCGA § 15-11-81 (b) (4) (A) (iv)." *In the Interest of S. H.*, 204 Ga. App. 135, 138 (1) (418 SE2d 454). The juvenile court made each of the requisite statutory findings, concluding that "[t]he child is without proper parental care and control affecting [his] welfare and said condition will not be remedied." "In determining whether the child is without proper parental care and control, the court shall consider, *without being limited to*, the following . . . (v) Physical, mental, or emotional neglect of the child or evidence of past physical, mental, or emotional neglect of the child." (Emphasis supplied.) OCGA § 15-11-81 (b) (4) (B) (v). "As a general rule, 'while . . . past deprivation is not sufficient for termination without a showing of present deprivation, the past conduct of the parent is properly considered by the court in determining whether such conditions of deprivation are likely to continue.' " *In the Interest of S. K. L.*, supra at 733 (1). "In addition to the considerations in subparagraph [OCGA § 15-11-81 (b) (4) (B)], where[, as in this case,] the child is not in the custody of the parent who is the subject of the proceedings, in determining whether the child is without proper parental care and control, the court shall consider, *without being limited to*, whether the parent without justifiable cause has failed significantly for a period of one year or longer prior to the filing of the petition for termination of parental rights: (i) To communicate or to make a bona fide attempt to communicate with the child; (ii) To provide for the care and support of the child as required by law or judicial decree; and (iii) To comply with a court ordered plan designed to

reunite the child with the parent or parents." (Emphasis supplied.) OCGA § 15-11-81 (b) (4) (C). The juvenile court found, inter alia, that R. P. is without proper parental care and control affecting his welfare and said condition will not be remedied in that: the mother has failed to comply with the court ordered plans designed to reunite her with her child; the mother has failed to cooperate or to show any progress over the period of years that the child has been in her care; the mother has had only sporadic visits with the child; and there have been efforts made for the mother through citizen panel reviews, case plans, court-appointed special advocates, mental health referrals and schooling referrals, all to no avail. The juvenile court also made numerous findings of fact in support of its conclusions of law, including, inter alia, the findings that "the mother has, without justifiable cause, failed significantly for a period of one (1) year or longer prior to the filing of the Petition for Termination of Parental Rights to comply with court ordered plans designed to reunite her with the child," and that two different citizen review panels have recommended parental rights termination. The juvenile court also found, based on a clear and convincing evidence standard, that termination of parental rights was in the best interest of the child. " ' "Obviously, those same factors which show the existence of parental misconduct or inability can also support a finding that the termination of parental rights of the defaulting parent would be in the child's best interest." ' " *In the Interest of S. H.*, supra at 140 (4).

The mother admitted in judicio in her testimony that she had missed visits with her child as provided for by the case plan; she visited the child only "off and on," because "when I do make plans something always comes up." At the hearing held on or about June 29, 1994, one of the county DFCS caseworkers who occasionally worked on the child's case testified, without objection, regarding the April 8, 1993 case plan, which had been in effect for over a year. The plan provided, inter alia, that the mother was to continue weekly therapy, would take a G. E. D. examination within six months or have secured part-time employment, would attend parenting classes; and would have weekly telephone or face-to-face contact with the child. The mother has not completed her G. E. D. or obtained a high school diploma; visitation has been sporadic; from April 1993 to October 1993, she only saw her child two times; and from November 1993 to the date of the hearing, she only had face-to-face contact with the child on one occasion. This sporadic visitation occurred notwithstanding that DFCS provided the mother with a MARTA card from the winter of 1992 to March 1994; the card was provided following an extension hearing during which the judge requested there be weekly visitations between mother and child. To further facilitate the interaction between mother and child a court-appointed special advocate

(CASA) was assigned to the case. The CASA met with the child in the foster home, and on one occasion arranged a meeting with the mother; however, after a second meeting was scheduled, the mother did not show up to visit her child. Subsequently, the attempt to use the CASA as an intermediary was discontinued.

It was the caseworker's opinion, based on her experience, that people who are raped have particular problems that need to be addressed. Before the mother was 18 years of age, DFCS arranged for her to receive group counseling at Kirkwood, due to her rape victimization; however, the mother elected to discontinue counseling upon attaining the age of 18 when she was no longer under DFCS custody. The mother made an admission in judicio (*Lamb v. Decatur Fed. Savings &c. Assn.*, 201 Ga. App. 583, 588 (411 SE2d 527)) that she quit counseling "because [she] felt that [she] did not need any more counseling for [the effect of the rape] because [she] had gotten over it." At the time of the termination hearing, the goal that the mother was to continue weekly therapy with additional individual support therapy was not completed. During closing argument, appellant mother's attorney made an admission (see *Jabaley v. Jabaley*, 208 Ga. App. 179 (1) (430 SE2d 119); *Rucker v. State*, 205 Ga. App. 651 (423 SE2d 51); Green, Ga. Law of Evidence (4th ed.), p. 440, § 238) that the mother "is still traumatized" by the rape, and urged the court to allow her more time to work out "her emotional problems" and all that occurred from the rape when she was 13 years old.

The mother enrolled in Southwest DeKalb High School in 1990, but was attending Avondale High School in December 1991 when she was expelled. To assist the mother in meeting the educational requirements of the plan, DFCS had placed her in "relative foster home placement" with her aunt, and enrolled the mother in a G. E. D. course that met daily at DFCS. However, the mother only attended the course sporadically and never completed it. The mother also participated unsuccessfully in the Private Industry Council program, which in addition to an education program helps the students find employment; the mother was briefly employed at the V. A. Hospital but was asked to leave that employment. The mother also failed to complete a government careers course, although DFCS paid for the initial part of the program.

Further, for a period of at least 12 months, the caseworker had received no financial support payments from the mother for her child. The mother has been working from forty to sixty hours a week for the last four months, at the Holiday Inn, and earning $5 per hour. She has been saving money for an apartment for herself and her child; she currently is living with her boyfriend and his mother and brother. She has not informed the caseworker where she is living, because most of the time when she calls, the caseworker's answering machine is on.

Applying the appropriate standard of appellate review, as discussed in Division 1 above, we find the trial court did not err in terminating the parental rights of appellant. Compare *In the Interest of J. D. D.*, 215 Ga. App. 68 (449 SE2d 655); *In the Interest of A. S. M.*, 214 Ga. App. 668 (2) (448 SE2d 703) where the court terminated parental rights for non-compliance for over a period of one year with the reunification plan.

*Judgment affirmed. Johnson and Smith, JJ., concur.*

DECIDED MARCH 20, 1995.

*William M. Warner, Deborah M. Lubin,* for appellant.

*Michael J. Bowers, Attorney General, William C. Joy, Senior Assistant Attorney General, Teresa E. Lazzaroni, Kevin M. O'Connor, Assistant Attorneys General, Robert G. Nardone, Dorothy Murphy,* for appellee.

