A97A1561. IN THE INTEREST OF P. N. L., a child.
(491 SE2d 639)

BEASLEY, Judge.

In an action filed by the Peach County Department of Family & Children Services ("DFACS"), the juvenile court terminated the parents' rights to P. N. L. after it found clear and convincing evidence meeting the requirements of OCGA § 15-11-81 (a). The parents challenge the sufficiency of the evidence. "The question on appeal is whether, after reviewing the evidence in a light most favorable to the lower court's judgments, 'any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost.' . . . [Cit.]" *In the Interest of R. N.*, 224 Ga. App. 202 (480 SE2d 243) (1997).

"Pursuant to OCGA § 15-11-81 (a), a juvenile court deciding whether to terminate a parent's rights employs a two-prong test, first determining whether there is 'clear and convincing evidence of parental misconduct or inability.' " *R. N.*, supra. As in *R. N.*, so here:

"a finding of 'parental misconduct or inability' must rest on clear and convincing evidence showing: 1) that the child is deprived; 2) that the cause of the deprivation is a lack of proper parental care or control; 3) that the cause of the deprivation is likely to continue or will not likely be remedied; and 4) that the continued deprivation is likely to cause physical, mental, emotional, or moral harm to the child. OCGA § 15-11-81 (b) (4) (A). If the first prong of the test is met, the trial court then considers whether the termination of parental rights is in the child's best interests." Id.

P. N. L. was born in October 1992. Four months later, DFACS removed the child from his parents' residence after social workers found him living in a structurally dangerous trailer with no heat source other than an unventilated (but empty) kerosene heater. The baby was "filthy, his ears . . . stopped up with what appeared to be 'crud,' dried milk and other matter[.] [T]he crevices of the baby's skin were filthy, feces appeared on the baby's scrotum, and the baby's body had generally been neglected to such a point that the child smelled." The mother denied any problems and was hostile toward DFACS workers. Following an award of temporary custody to DFACS, the court held a hearing on March 25, 1993, at which the parents appeared. The court found the facts recited above, in support of its order finding that P. N. L. was "deprived." See OCGA § 15-11-2 (8).

The court also ordered the parents to comply with a reunification plan developed by DFACS, which among other things required the parents to pay child support, visit P. N. L. bi-weekly, and maintain adequate housing. His mother visited sporadically, but neither parent paid any child support. From 1993 to 1996, the court entered numerous orders requiring compliance with reunification plans, but the parents failed. As a result, DFACS petitioned in September for termination of parental rights. An evidentiary hearing followed in February.

The parents admitted they moved to Florida in August 1993 and had no contact with DFACS or their child for at least six months thereafter. DFACS caseworkers testified neither parent ever complied with any of the reunification plans. One social worker testified that after the parents moved to Florida, she spoke with the mother by telephone and encouraged her to visit P. N. L. or send her son letters or gifts. But the parents telephoned P. N. L. only one time in early 1996, maintained little or no contact with DFACS, and sent no gifts, letters, clothing or other support for their son.

The parents conceded they received copies of the case plan and knew of the child support requirements but paid no support and did not visit the child after moving to Florida. The mother testified she was "scared" to contact DFACS or send any child support because she

was afraid DFACS had taken out a criminal "abandonment" warrant against her. The father admitted he failed to pay $5 per week child support despite having full-time employment since August 1993. At the time of the hearing, the father testified he "brought home" between $350 and $475 per week in wages. He blamed the failure to pay child support on the need to pay medical bills and establish credit. At one point, the parents were living in a beachside condominium that rented for $1,000 per month.

1. Despite the parents' lame arguments that the evidence does not support the finding of "parental misconduct or inability" required by OCGA § 15-11-81 (a), it clearly supported each criterion set forth in OCGA § 15-11-81 (b) (4) (A).

(a) The unappealed finding of deprivation in the juvenile court's order of March 25, 1993, established deprivation for purposes of the termination hearing. *In the Interest of C. D. F.*, 222 Ga. App. 905, 907 (1) (476 SE2d 654) (1996). Even aside from this conclusive finding, evidence showing the terribly unsanitary conditions in which P. N. L. lived as an infant provided clear and convincing evidence he was "without proper parental care [and] control . . . necessary for his physical . . . health. . . ." OCGA § 15-11-2 (8) (A). See *R. N.*, supra at 203-204.

(b) The court's determination that this deprivation resulted from "lack of proper parental care or control" was also warranted by clear and convincing evidence. OCGA § 15-11-81 (b) (4) (A) (ii). Although P. N. L. remained in DFACS' custody from the time he was three months old until the evidentiary hearing almost four years later, the court was justified in finding the factors listed in OCGA § 15-11-81 (b) (4) (C) (i), (ii), and (iii). Ample evidence showed that for over a year, without valid reason, neither parent (1) communicated with P. N. L. or made any bona fide effort to communicate with him in a "meaningful, supportive, parental manner"; (2) provided court-ordered child support for P. N. L.; or (3) complied with the court-ordered reunification plan. See *In the Interest of A. S. M.*, 214 Ga. App. 668, 672-673 (2) (448 SE2d 703) (1994).

(c) This evidence also sufficed to support a finding that P. N. L.'s deprivation was likely to continue or likely would not be remedied. OCGA § 15-11-81 (b) (4) (A) (iii). "The fact that the [parents] made little or no effort to support or even contact [their child] in the [four] years since the deprivation hearing [of March 1993] demonstrates that such deprivation is likely to continue, as does [their] failure to implement the DF[A]CS plan or to discuss [their] inability to comply with it or seek its modification. [Cit.]" *In the Interest of R. J. P.*, 222 Ga. App. 771, 772 (1) (476 SE2d 268) (1996).

(d) Clear and convincing evidence supports the court's finding that further deprivation would likely cause P. N. L. "serious physical,

mental, emotional, or moral harm." OCGA § 15-11-81 (b) (4) (A) (iv). The child was removed from unsanitary physical conditions and surroundings when only three months old. His parents totally failed to take the steps necessary to reunite with their son. Although they were willing to pay $1,000 a month rent for a seaside condominium, they were not willing to pay even $5 a week in child support. Years of indifference to this child was solid ground for the court's forecast that P. N. L. would experience harm from continued deprivation if returned to his parents. See *In the Interest of W. J. G.*, 216 Ga. App. 168, 172 (4) (453 SE2d 768) (1995).

2. Finally, the evidence satisfied the second prong of OCGA § 15-11-81 (a)'s test by showing termination to be in P. N. L.'s best interest. The same evidence showing parental misconduct or inability may, and here does, establish this requirement. See *In the Interest of R. P.*, 216 Ga. App. 799, 801 (2) (456 SE2d 107) (1995). Additional evidence is DFACS workers' testimony that P. N. L. had bonded with the foster family with whom he had lived since June 1994, had adjusted well to their home, and considered the foster parents to be "his mother and father . . . [,] the only parents he has ever known." See *In the Interest of M. R.*, 213 Ga. App. 460, 465 (1) (b) (444 SE2d 866) (1994).

Termination of appellants' rights as parents was not error, as it was the predictable legal consequence of their deliberate termination of any relationship with their son as a matter of fact.

*Judgment affirmed. McMurray, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED AUGUST 19, 1997.

*Jones & Oliver, Charles E. Jones*, for appellant.

*Thurbert E. Baker, Attorney General, Jeffrey L. Milsteen, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Assistant Attorney General, W. Ashley Hawkins*, for appellee.