A98A0695. IN THE INTEREST OF J. M. B., a child.
(501 SE2d 259)

McMURRAY, Presiding Judge.

In an action filed by the Athens-Clarke County Department of

Family & Children Services ("DFACS"), the juvenile court terminated the parental rights of appellant-respondent, the natural mother, to the child J. M. B., after it found clear and convincing evidence of parental inability meeting the requirements of OCGA § 15-11-81 (a). In her sole enumeration of error, appellant challenges the sufficiency of the evidence to support the juvenile court's determination that any deprivation suffered by J. M. B. was caused by a lack of parental care or control. *Held*:

"The question on appeal is whether, after reviewing the evidence in a light most favorable to the lower court's judgments, 'any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost.' [Cits.] . . . Pursuant to OCGA § 15-11-81 (a), a juvenile court deciding whether to terminate a parent's rights employs a two-prong test, first determining whether there is 'clear and convincing evidence of parental misconduct or inability.' . . . [A] finding of 'parental misconduct or inability' must rest on clear and convincing evidence showing: 1) that the child is deprived; 2) that the cause of the deprivation is a lack of proper parental care or control; 3) that the cause of the deprivation is likely to continue or will not likely be remedied; and 4) that the continued deprivation is likely to cause physical, mental, emotional, or moral harm to the child. OCGA § 15-11-81 (b) (4) (A). If the first prong of the test is met, the trial court then considers whether the termination of parental rights is in the child's best interests." *In the Interest of R. N.*, 224 Ga. App. 202 (480 SE2d 243).

Viewed in the light most favorable to the juvenile court's determination, the evidence revealed the following: J. M. B. was born on June 14, 1991. Two weeks after her birth, appellant sent J. M. B. to live with an aunt, where she stayed until she was 13 months old. Appellant retrieved J. M. B. in May 1992 and from that time "until October of 1992, [appellant and J. M. B.] stayed with [appellant's] grandmother in Washington, Georgia. . . . And then sometime in November of '92, [appellant and J. M. B.] left and went to Houston, Texas[.] . . . [Appellant] ran into hard times and, . . . went to stay with [her] father, who at that time was living in Houston, Texas." Appellant returned to Atlanta, Georgia in April or May 1993 but by June 1993, appellant left J. M. B. with Sheila Smith, appellant's first cousin, in Athens, Georgia. At that time, appellant "did not have stable housing." Sheila Smith agreed to keep J. M. B. for the summer while appellant got settled in Atlanta and attended school at Georgia State University. Sheila Smith expected that "when she [appellant] got straightened out, for her to come back and pick her [J. M. B.] up." But appellant did not pick up J. M. B. at summer's end and J. M. B. has "been with [Sheila Smith] ever since [she] took [her] in." Appellant made no arrangement for the support of J. M. B. Her only contri-

butions were "fifty dollars in a birthday card . . . and some clothing. . . ." When Sheila Smith asked appellant to keep her daughter, J. M. B., so Sheila Smith could do her annual training for the Army, appellant "said that, no, she was moving and she didn't have time." Sheila Smith lost contact with appellant and did not know when or if appellant would retrieve the child. Consequently, in June 1994, Sheila Smith contacted DFACS and applied to become J. M. B.'s "relative foster parent." At that time, the department took custody of the child. In an order dated June 18, 1994, J. M. B. was officially placed with DFACS and has lived with Sheila Smith ever since. DFACS proposed a reunification plan but appellant did not meet with DFACS or appear before any of the citizen review panel meetings. In the years that followed, appellant met none of the goals of the reunification plan. Specifically, the citizen review panel found that appellant paid no regular child support, failed to attend a parenting class, failed to maintain a suitable residence, and failed to establish a positive relationship with the child. In fact, from April 1995 through September 1996, appellant made no contact whatsoever with J. M. B.

Finally, in late September 1996, Carol Land, the DFACS caseworker, reached appellant by telephone at the number she had been consistently calling since taking over the case file. Carol Land testified that appellant admitted receiving the panel review recommendations by mail. Carol Land also confirmed she had appellant's correct mailing address. In her conversation with appellant, Carol Land made a "last-ditch effort" to get appellant to participate in the reunification plan. After failing to show up at the first appointment, appellant finally visited J. M. B. on October 1, 1997. This visit was "strained" and was "hard for the child." As a result of appellant's failure to complete the reunification plan, DFACS petitioned for termination of parental rights.

Appellant admitted she failed to keep Sheila Smith apprised of her address or telephone number for almost 18 months and thereafter only contacted Sheila Smith a few times. She admitted she left J. M. B. with Sheila Smith because she did not have stable housing. Although appellant planned to retrieve J. M. B. when she finished college, she conceded she did not tell Sheila Smith she intended to leave J. M. B. with her for four years. She also admitted she did not contact DFACS or attempt to keep DFACS informed of her whereabouts, even though she had received a letter regarding a 1995 hearing. With the exception of $50 and a few gifts of clothing, appellant admitted she failed to provide support for J. M. B. Appellant was employed more than 38 hours per week, had an apartment she shared with a male friend, was able to attend school at Georgia State University, and was able to afford a car in August 1996. Even before appellant bought her car, she was able to arrange transportation to

visit friends and relatives. Nevertheless, appellant admits that she visited J. M. B. only four times from the date she left J. M. B. with Sheila Smith until the date of the termination hearing.

1. The evidence clearly and convincingly supports the juvenile court's finding of "parental misconduct or inability" required by OCGA § 15-11-81 (a), as established by the criteria listed in OCGA § 15-11-81 (b) (4) (A).

(a) The unappealed finding of deprivation in the juvenile court's order of June 28, 1994, established deprivation for purposes of the termination hearing. *In the Interest of P. N. L.*, 228 Ga. App. 187, 189 (1) (491 SE2d 434). See also *In the Interest of C. D. F.*, 222 Ga. App. 905 (1), 907 (476 SE2d 654). Moreover, the appellant's near abandonment of J. M. B. provided clear and convincing evidence that J. M. B. was "without proper parental care or control . . . necessary for [her] physical, mental, or emotional health. . . ." OCGA § 15-11-2 (8) (A).

(b) The juvenile court's determination that deprivation resulted from "lack of proper parental care or control" was also supported by clear and convincing evidence. OCGA § 15-11-81 (b) (4) (A) (ii). Although J. M. B. remained in Sheila Smith's custody from June 1993 until the evidentiary hearing in October 1996, the juvenile court was justified in finding the factors listed in OCGA § 15-11-81 (b) (4) (C) (i), (ii), and (iii). The evidence revealed that for well over a year and without valid reason appellant (i) failed to make a bona fide effort to communicate with J. M. B. in a "meaningful, supportive, parental manner"; (ii) failed to provide child support for J. M. B.; and (iii) failed to comply with the reunification plan. See *In the Interest of P. N. L.*, 228 Ga. App. 187, supra, and *In the Interest of A. S. M.*, 214 Ga. App. 668, 672-673 (2) (448 SE2d 703).

(c) This evidence also supported a finding that J. M. B's deprivation was likely to continue or likely would not be remedied. OCGA § 15-11-81 (b) (4) (A) (iii). That the appellant made little or no effort to support or even contact J. M. B. during the years since the deprivation proceeding coupled with her failure to implement the DFACS plan or to discuss her inability to comply with the plan or seek its modification is compelling evidence that deprivation is likely to continue. *In the Interest of R. J. P.*, 222 Ga. App. 771, 772 (1) (476 SE2d 268). Clearly, appellant places her convenience and personal ambitions before the welfare of her child. As the juvenile court observed, appellant took the attitude she could place J. M. B. "in storage."

(d) Clear and convincing evidence supports the court's finding that further deprivation would likely cause J. M. B. "serious physical, mental, emotional, or moral harm. . . ." OCGA § 15-11-81 (b) (4) (A) (iv). Appellant failed to take the steps necessary to reunite with her daughter. Although she was willing to pay $230 per month for a car, she was not willing to pay minimal child support. Moreover, when

appellant was offered a "last ditch" opportunity to visit her child, she failed to take matters seriously and missed the initial meeting. Years of appellant's conscious indifference and her cavalier attitude toward her parental duties are legitimate bases for the juvenile court's prediction that J. M. B. would experience harm from continued deprivation if returned to appellant. See *In the Interest of P. N. L.*, 228 Ga. App. 187, supra, and *In the Interest of W. J. G.*, 216 Ga. App. 168, 172 (4) (453 SE2d 768).

2. Finally, the evidence satisfied the second prong of the OCGA § 15-11-81 (a) test by showing termination to be in J. M. B.'s best interest. "The same evidence showing parental misconduct or inability may, and here does, establish this requirement. [Cit.]" *In the Interest of P. N. L.*, 228 Ga. App. 187, 190 (2), supra. Moreover, the DFACS caseworker testified that J. M. B. was happy and well-adjusted and had bonded with Sheila Smith's family, the only family she had ever really known. See *In the Interest of M. R.*, 213 Ga. App. 460, 464 (1) (b), 465 (444 SE2d 866).

*Judgment affirmed. Blackburn and Eldridge, JJ., concur.*

DECIDED APRIL 1, 1998.

*Thomas J. Killeen*, for appellant.

*Thurbert E. Baker, Attorney General, William C. Joy, Dennis R. Dunn, Senior Assistant Attorneys General, Shalen A. Sgrosso, Stephanie M. Baldauff, Assistant Attorneys General, Garcia & Powell, Tony D. Coy*, for appellee.