517 S.E.2d 598 (1999)
238 Ga. App. 159
In the Interest of S.C.M.H., a child.
No. A99A0241.
Court of Appeals of Georgia.
May 19, 1999.
*600 John C. Leggett, Conyers, for appellant.
Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, Shalen A. Sgrosso, Assistant Attorney General, Mumford, Myers & Mooney, Albert A. Myers III, Conyers, for appellee.
*599 SMITH, Judge.
The mother of S.C.M.H. appeals from an order entered by the juvenile court terminating her parental rights. We find no error, and we affirm.
Under OCGA § 15-11-81(a), the decision whether to terminate a parent's rights involves a two-prong test. First, the juvenile court must determine whether "clear and convincing evidence of parental misconduct or inability" exists. Id. In the Interest of R.N., 224 Ga.App. 202, 480 S.E.2d 243 (1997). A finding of parental misconduct or inability must be based on clear and convincing evidence showing the following: (1) The child is deprived; (2) this deprivation is caused by the parent's "lack of proper parental care or control"; (3) the cause of the deprivation is likely to continue; and (4) the "continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child." OCGA § 15-11-81(b)(4)(A)(i)-(iv). Under OCGA § 15-11-81(a), if this first prong is met, the juvenile court must then consider whether termination is in the child's best interest. R.N., supra. In reviewing the evidence on appeal, we do not weigh the evidence or determine witness credibility. Instead, "we defer to the Juvenile Court's factfinding and affirm unless the evidence fails to satisfy the appellate standard." (Citation and punctuation omitted.) In the Interest of K.W., 233 Ga.App. 140, 141(2), 503 S.E.2d 394 (1998).
1. The mother first claims that the trial court erred in finding that S.C.M.H. was deprived. But the record contains three previous unappealed orders finding that S.C.M.H. was deprived, that this deprivation was likely to continue, and that it would not be in her best interest to return to her mother. S.C.M.H. was first found to be deprived in June 1993 by the Newton County Juvenile Court. The case was later transferred to Rockdale County, and a second order entered in November 1994 included the following findings: The mother's home had no water, electricity, or food, and several windows were broken out; the mother had been intoxicated in the company of her children, thereby neglecting them; despite arrangements made by the Rockdale County Department of Family & Children Services for S.C.M.H. to stay with her grandmother until the mother could find stable housing, the mother took S.C.M.H.; and the minor sister of S.C.M.H. had become pregnant by a 20-year-old male while in the mother's custody. The order further recited that S.C.M.H. was "inadequately sheltered, protected and supervised." Under this order, the mother was required, among other things, to take weekly drug screens, pay $25 per week child support, establish a stable home, provide proof of employment, and maintain employment at all times.
The third order, entered in June 1998 (one month before the termination hearing), made several findings, including the following: S.C.M.H. and her sister had been in custody of DFACS since August 1994, when her sister became pregnant at age 12, and circumstances warranting the earlier finding of deprivation continued; the mother had not completed therapy for her alcohol and drug problem; she was unable to provide an adequate home or provide for the children's physical and moral health; and the children *601 were "without parental care and control and [were] likely to remain so for the foreseeable future." The court also found that the mother had failed to complete her case plan goals of remaining drug and alcohol free, receiving treatment for her drug and alcohol abuse, and obtaining steady employment and housing. Based on these findings, the juvenile court concluded that it would not be in the best interests of S.C.M.H. to be returned to the mother. These unappealed orders were sufficient to establish that S.C.M.H. was deprived. See, e.g., In the Interest of K.L., 234 Ga.App. 719, 722, 507 S.E.2d 542 (1998); R.N., supra at 203, 480 S.E.2d 243. In the Interest of G.A.P., 147 Ga.App. 568, 249 S.E.2d 157 (1978), relied upon by the mother, is distinguished from this case. In G.A.P., this court stated that the juvenile court erroneously "took judicial notice of a previous order issued by it in connection with a prior petition alleging that [the] child was deprived." (Emphasis supplied.) Id. But here, the previous deprivation orders constituted part of the same legal proceeding instituted by Newton County and continued by Rockdale County.
Furthermore, the record supports a finding of deprivation. A deprived child is defined in part as a child who is "without proper parental care or control." OCGA § 15-11-2(8)(A). A juvenile court can consider several factors in determining whether a child is without proper parental control, including the parent's "[e]xcessive use of or history of chronic unrehabilitated abuse of intoxicating liquors or narcotic or dangerous drugs," as well as a non-custodial parent's failure "for a period of one year or longer prior to the filing of the petition for termination... [t]o provide for the care and support of the child as required by law or judicial decree" or to comply with a court-ordered reunification plan. OCGA § 15-11-81(b)(4)(B)(ii) and (C)(ii) and (iii).
Evidence presented at trial was sufficient to show the presence of these factors. First, the mother was required by the juvenile court's previous order to pay $25 per week child support on behalf of S.C.M.H. It appears that she failed to make these payments; two DFACS caseworkers who worked with her from September 1995 through the time of the hearing in July 1998 testified that they were unaware of any support payments made by the mother.
Also, the plan developed by one of these caseworkers required the mother, among other things, to receive help for her drug and alcohol problem and remain drug and alcohol free. Although the caseworker testified that drug screens were negative during the time she worked with her, the mother "admitted she was still drinking and having a problem with alcohol." She also testified concerning rehabilitation programs begun but not completed by the mother. The caseworker stated that she was "very lenient with" the mother and attempted to give her options concerning treatment. For example, the mother claimed she did not have transportation to attend appointments for one rehabilitation program, and the caseworker offered to take her to these appointments and discussed other transportation options. The mother still failed to complete the program. The caseworker offered her another option, inpatient treatment, and arranged with the mother to take her to the facility. The mother, however, failed to meet the caseworker at the designated time and did not attend that program. The caseworker then allowed the mother to attend Alcoholics Anonymous meetings, which she also failed to complete. Finally, on two occasions, once during a scheduled visit between the mother and S.C.M.H., and once during a court proceeding, the caseworker smelled alcohol about her. These facts showed a lack of parental care and control.
In addition, the mother's case plan required her to become gainfully employed, maintain her employment, and maintain a stable residence. One caseworker, who worked with the mother from September 1995 through August 1997, testified that the mother reported to her that she was working, but the caseworker "was unable to verify any of those employments because she had either quit the job or reported that she had injured herself and couldn't go or for different reasons." The caseworker verified only one temporary job, which the mother had when the caseworker began working with *602 her. She was employed at that job only through December 1995. The caseworker testified that the mother failed to maintain a stable residence "for any length of time." She also stated that visitation with S.C.M.H. was "very erratic.... Sometime it was a couple times a month. Sometimes I wouldn't hear from her for a few weeks. And sometimes there was a space of a few months between visits."
This caseworker also testified concerning her attempts to reunify the mother with S.C.M.H. She acknowledged that the efforts she made to assist the mother in attending alcohol and drug treatment classes were made in part to facilitate possible reunification, and she testified that she suggested that the mother receive counseling herself in order to reach this goal. The mother did not receive any individual counseling, and although she attended a few family counseling sessions concerning her other daughter, she did not complete them.
Finally, a different caseworker testified concerning her interaction with the mother during the last few months before the termination hearing, from April 1998 through July 1998. At the time this caseworker began working with the mother, attempts were no longer being made to reunify her with S.C.M.H. This caseworker testified that during each visit over the past three months, the mother's claimed residence was different from the one before. These facts established during the hearing, in addition to those recited in the juvenile court's orders, showed both past and present deprivation within the meaning of OCGA § 15-11-2(8)(A).
2. Contrary to the mother's contention, the evidence presented at trial also sufficiently supported the juvenile court's finding that the causes of deprivation were likely to continue. "Although past deprivation is not sufficient for termination without a showing of present deprivation, the court can consider a parent's past conduct in determining whether such conditions of deprivation are likely to continue." (Citations and punctuation omitted.) R.N., supra at 204, 480 S.E.2d 243. While the mother testified she had been living in an apartment with a man for approximately six months, other evidence was presented that she had three residences within the three months preceding the hearing. The juvenile court was authorized to infer from the mother's past conduct that this pattern of failing to establish a stable household was likely to continue. Furthermore, based on her continuous failure to pay $25 per week for the support of S.C.M.H., as ordered, and her repeated failure to obtain rehabilitation for her alcohol problem despite repeated attempts by her caseworker to assist her in attending counseling, "[t]he court was entitled to infer from the evidence that, despite the best efforts of DFACS ... the same pattern of deprivation would continue." R.N., supra at 204, 480 S.E.2d 243.
We note that the mother makes no argument concerning the requirement that parental misconduct must be based upon a showing that "continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child." OCGA § 15-11-81(b)(4)(A)(iv). But we have nevertheless examined the record with respect to this requirement. We conclude that the evidence of the mother's repeated failure to remain alcohol free and her failure to take steps necessary to reunite with S.C.M.H. was sufficient to satisfy this requirement. See generally In the Interest of J.M.B., 231 Ga.App. 875, 878-879(1)(d), 501 S.E.2d 259 (1998) (appellant's failure to take necessary steps to reunite with child); In the Interest of J.M.D., 221 Ga.App. 556, 472 S.E.2d 123 (1996) (termination upheld, even when mother attempted to obtain rehabilitation, where mother continued to use drugs). We also note that the juvenile court was not required to return S.C.M.H. to the mother and then not change custody until the child suffered serious injury. See, e.g., In the Interest of K.R.C., 235 Ga.App. 354, 355(1), 510 S.E.2d 547 (1998).
Finally, the mother does not take issue with the juvenile court's conclusion that termination would be in the best interest of S.C.M.H. But again, we have considered this requirement. The same factors showing the existence of parental misconduct or inability can support a finding that termination of parental rights would be in the child's best interest. See, e.g., In the Interest *603 of P.N.L., 228 Ga.App. 187, 190(2), 491 S.E.2d 434 (1997). Given the evidence of the mother's history of failure to maintain stable housing and employment, her failure to provide minimal child support, and her failure to complete drug and alcohol rehabilitation and remain alcohol free, the trial court was authorized to conclude that termination of the mother's parental rights was in S.C.M.H.'s best interest.
3. The mother argues that the juvenile court made several findings that were not supported by the record. She first claims that the court erroneously found that she came into contact with her case managers with an odor of alcoholic beverage about her person. The trial transcript, however, clearly shows that a caseworker at least twice noticed the odor of alcohol on the mother's person. The mother also contends the juvenile court erroneously cited to earlier orders entered in her case, but as discussed above, it is well established that prior unappealed deprivation orders may be used to establish deprivation. K.L., supra at 722, 507 S.E.2d 542; R.N., supra at 203, 480 S.E.2d 243.
The mother also maintains the record does not support the juvenile court's finding concerning her failure to meet case plan goals. In this regard, the juvenile court found as follows: "The mother has failed to meet any of her case plan goals in that the mother has failed to maintain consistent and regular contact with the Petitioner, has failed to maintain stable housing, has failed to maintain stable employment, has failed to complete drug and alcohol treatment and has failed to communicate and visit with the child [in] a regular or meaningful parental manner. The mother has therefore failed to abide by a case plan as ordered by this Court to reunify the family."
The mother claims she often visited with S.C.M.H. Although her caseworker testified that the mother met with S.C.M.H. during each scheduled visit, the mother's previous caseworker testified that her visits with the child were "very erratic." The mother also contends she met her case plan goal of obtaining employment. But the evidence on this issue was conflicting. While the testimony of her caseworkers showed that she had not maintained steady employment, the mother testified to the contrary. It was for the juvenile court, however, and not this court, to assess the credibility of the witnesses. See K.W., supra at 141(2), 503 S.E.2d 394.
With regard to the goal that the mother abstain from drug and alcohol use, it is true that she underwent at least three negative drug screens. The mother mischaracterizes the evidence, however, by arguing that "the screens were discontinued because the Department determined not to pay for any further tests." Her caseworker testified that the Department paid for the screens until Department "funds were real low. And we were told that the client should be paying" for the screens. The caseworker requested the mother to pay for future screens, and the mother stated often that she would do so. According to the caseworker, however, she failed to "follow through." The trial court's findings, as well as its conclusion that the mother's parental rights should be terminated, are supported by the record, and she has shown no basis for reversal.
4. We do not agree with the mother that the juvenile court erroneously failed to order DFACS to consider less restrictive alternatives to termination. First, as discussed above, the record supports the juvenile court's conclusion that termination was appropriate. Second, we note that the trial transcript shows that DFACS searched for relatives with whom to place S.C.M.H. but was unable to locate anyone suitable or willing to care for the child.
5. The mother contends the trial court erroneously admitted hearsay including statements about goals and plans that were made on her behalf, "often without her approval or even knowledge." To the extent that this argument encompasses the caseworkers' testimony concerning case plans developed on the mother's behalf, we note that these case plans were not admitted into evidence, contrary to the mother's argument. While it is true that the caseworkers referred *604 to these plans during their testimony, it appears that the information contained within these plans was within the caseworkers' personal knowledge.
It does appear that the juvenile court in its final order may have taken notice of prior case plans, which were not actually admitted into evidence. But we find no reversible error, because the trial court's conclusion that termination was warranted and in the best interest of the child was supported by evidence that was properly admitted.
Judgment affirmed.
POPE, P.J., and ELDRIDGE, J., concur.