A00A0125. IN THE INTEREST OF V. H. W. et al., children.
(527 SE2d 30)

McMURRAY, Presiding Judge.

On September 15, 1998, the Madison County Department of Family & Children Services (DFACS) petitioned to terminate the parental rights of M. W., natural mother, in the minor children, V. H. W. (V. W.) and S. D. R. W. (S. W.), alleging that, for the year preceding the petition, M. W. was unable to maintain regular employment to meet her own needs, failed to provide the necessary care or support for her children as required by law, and significantly failed to participate in the development of and to comply with court-ordered case plans designed to reunite her with her children. M. W. appeals from the orders of the Madison County Juvenile Court, terminating her parental rights. In four related enumerations of error, M. W. challenges the sufficiency of the evidence. Viewed in the light most favorable to the juvenile court's disposition, the evidence authorized the following facts:

M. W. was born July 27, 1975, and was 23 years of age at the time of the hearing. M. W. was reared by her maternal grandmother, who was granted custody when M. W. was very young. Never married, M. W. had, at the time of the hearing, recently given birth to her fourth child out of wedlock. The first child, S. W., was born March 17, 1994, the second, A. W., was born August 29, 1995, and the third child, V. W., was born March 5, 1997. Each child has a different father. In April 1993, when M. W. was not yet 18, her grandfather died, leaving her a substantial inheritance in the form of a business that provided M. W. with an income of $700 to $800 per week. M. W. found out she was pregnant with S. W. in June and turned 18 in July. By her own admission, M. W. spent her inheritance "drinking, partying, running wild and living wrong." Consequently, M. W. did not care for her children like she should. In May 1997, DFACS intervened due to concerns that S. W., A. W., and three-month-old V. W. were deprived. The infant "seemed underweight and was losing some weight." V. W. was born with a cleft lip and needed to be held while she was fed, but Donna Gordon, the DFACS case manager, observed that the infant would be left alone "on a couch with a bottle propped up." A. W. was placed with a relative while temporary custody of S. W. and V. W. was placed with DFACS. S. W. and V. W. have been in the custody of DFACS "continuously since that time." When M. W. first lost custody of her children, she began to drink heavily, as much as one case of beer in a single day. Because M. W. had a place to live and reliable income, initial case plans envisioned reuniting M. W. with S. W. and V. W., if M. W. would complete a drug and alcohol assessment, undergo random drug tests, attend parenting classes, and undergo psychological evaluation. By September 1997, M. W. had not

completed any of her case plan but indicated her willingness to cooperate, and so a third case plan was completed in December 1997. But by then, M. W. did not have her own residence and no longer had any income. Under these case plans, M. W. never obtained a psychological evaluation, never got a drug and alcohol assessment, never paid consistent child support, and, in fact, never paid any child support at all. In June 1998, after S. W. and V. W. had been in foster care for a year, the focus of the case plan changed from reunification of the children with M. W. to permanency for the children, involving termination of parental rights and adoption or placement with a suitable family member. When it appeared that S. W. could be placed with paternal relatives, M. W. still failed to take any action to comply with the June 1998 case plan. Only in September 1998, when this placement option was no longer available, and M. W. realized DFACS was serious about termination, did M. W. start completing any part of her case plan. Now pregnant with her fourth child, M. W. went to live with the Posses, the parents of Matthew Poss, the child's father. She intends to marry the father but had not done so as of the hearing in February 1999. Matthew Poss pleaded guilty to one count of family violence battery committed on April 15, 1998, against M. W.'s second child, A. W. M. W. first claimed she had not consumed alcohol since May 1998, when she returned to Matthew Poss. But in June, when M. W. left Matthew Poss again, to stay for a week or more at Linda Parham's house, she admitted she would drink but not use drugs. She further distinguished drinking two beers and abusing alcohol. By December 1998, M. W. had completed her psychological evaluation, as well as the drug and alcohol assessment, and had begun parenting classes. Nevertheless, she remained completely dependent upon Matthew Poss financially and had no realistic plans of supporting herself.

It is undisputed that M. W. consistently visited her children, but V. W. "appears more attached to the grandparents than to [M. W.]" V. W. separates easily from M. W. after visitation and responds to the foster parent as a mother. The two foster families hosting S. W. and V. W., respectively, are identified as adoptive families. *Held*:

1. Termination of parental rights based on parental misconduct and inability may be authorized by the juvenile court's determination that the child is deprived due to lack of proper parental care or control, subsistence, or education as required by law or as necessary for the child's physical, mental, or emotional health or morals (OCGA § 15-11-2 (8)); that such deprivation is likely to continue; and that continued deprivation will cause serious physical, mental, emotional, and moral harm to the child. OCGA § 15-11-81 (b) (4) (A) (i)-(iv). This deprivation must be established by clear and convincing evidence. OCGA § 15-11-33 (b) (1). In addition, where the child is not in the

custody of the parent whose rights are in issue, the juvenile court shall consider whether lack of proper parental care and control is demonstrated by proof that, for a period of one year or longer prior to the filing of the petition to terminate parental rights, the parent, without justifiable cause, failed significantly to provide for the care and support of the child as required by law or judicial decree and failed significantly to comply with a court-ordered plan designed to reunite the child with the parent. OCGA § 15-11-81 (b) (4) (C) (ii), (iii); *In the Interest of K. S. W.*, 233 Ga. App. 144, 148 (1) (503 SE2d 376). " 'This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the [juvenile] court's fact-finding and affirm unless the appellate standard is not met. (Cit.)' *In the Interest of R. N.*, 224 Ga. App. 202 (480 SE2d 243)." *In the Interest of S. S.*, 232 Ga. App. 287, 289 (501 SE2d 618).

It is undisputed that, during the year preceding the filing of these termination petitions, M. W. wholly failed to support her children while they were in the custody of DFACS and wholly failed to motivate herself to comply with court-approved case plans for reunification. This is clear and convincing evidence that the children S. W. and V. W. were deprived due to M. W.'s parental misconduct or inability. *In the Interest of J. M. B.*, 231 Ga. App. 875, 878 (1) (b) (501 SE2d 259). Such deprivation is likely to continue or likely will not be remedied, in that M. W. had no realistic plans to support herself, much less her children. The record authorizes the conclusion that, based upon her past, M. W. places herself and her own unrestrained desires above those of her children. Id. at 878 (1) (c). Although M. W. claims she has changed dramatically since the filing of the termination petitions, the decisions about each child's future must rest upon more than positive promises which are contradicted by negative past facts. *In the Interest of J. L. Y.*, 184 Ga. App. 254, 257 (2) (361 SE2d 246). The continued deprivation will cause serious physical, mental, emotional, or moral harm to the children, as they have special medical, educational, and emotional needs and are thriving in foster care.

2. The same factors indicating deprivation due to M. W.'s parental unfitness or inability also support the juvenile court's judgment that termination of M. W.'s parental rights was in the best interest of each child. *In the Interest of C. W. S.*, 231 Ga. App. 444, 448 (4) (498 SE2d 813).

*Judgment affirmed. Johnson, C. J., and Phipps, J., concur.*

DECIDED DECEMBER 7, 1999 — 

*Ninfo & Ledbetter, Mario S. Ninfo, Milford & Milford, Richard K. Milford*, for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Assistant Attorney General, Thomas A. Camp,* for appellee.