A00A0234. In the Interest of D. M. H. et al., children.
(528 SE2d 816)

Eldridge, Judge.

D. Y. H. appeals from the termination of her parental rights to three of her children, D. M. H., E. P. H., and C. L. Y. This Court finds that the State proved that the children's deprivation was caused by D. Y. H.; that deprivation was likely to continue; and that termination was in the best interests of the children. Therefore, we affirm.

Viewed in favor of the trial court's judgment, *In the Interest of J. M. B.*, 231 Ga. App. 875, 876 (501 SE2d 259) (1998), the relevant facts are as follows: D. Y. H. married E. H. in 1988. She had three children from previous relationships, including one of the children at issue in this case, C. L. Y., born in November 1987. D. Y. H. subsequently gave birth to E. H.'s child, E. P. H., in May 1989. In 1990, E. H. was imprisoned after stabbing D. Y. H. and committing an unrelated robbery.

While still married to E. H., D. Y. H. gave birth to D. M. H. in September 1991 as a result of a relationship with another man. As such, E. H. was the legal father of D. M. H. However, D. M. H. was placed with a maternal cousin at birth.

D. Y. H. first lost custody of C. L. Y., E. P. H., and their two older siblings in 1992, when the Department of Family & Children Services ("DFACS") found the children to be neglected and removed the children from D. Y. H.'s care. A trial court's finding that the children were deprived was not challenged by D. Y. H. At that time, D. Y. H. was homeless, unemployed, and abusing alcohol and illegal drugs. DFACS developed reunification case plans for D. Y. H. and provided substantial assistance in attempting to reunify the family.

In August 1996, the four oldest children were returned to D. Y. H. D. Y. H.'s cousin also returned D. M. H. to her care, without DFACS' approval. Soon thereafter, D. Y. H. was fired from her job and faced eviction. In March 1997, DFACS again removed all five children on the basis of neglect. Among the allegations of that deprivation petition was that D. Y. H. failed to get medical attention for five-year-old D. M. H. after he was hit by a car and injured.

D. Y. H. subsequently was evicted and moved in with a man she described as her "boyfriend," although she was still married to E. H.

She rarely contacted or visited the children. While in foster care, D. M. H., E. P. H., and C. L. Y. did well academically, although D. M. H. had some problems with an attention deficit.

In March 1998, DFACS and the Citizens Review Panel decided to end reunification efforts. In August 1998, the State filed a petition to terminate the parental rights of D. Y. H. and E. H.[1] A hearing was conducted on February 23, 1999, in Cobb County Juvenile Court. After hearing the evidence, the trial court concluded that the clear and convincing evidence fulfilled the statutory requirements of OCGA § 15-11-81 and supported termination. D. Y. H. timely appealed. *Held*:

In three enumerations of error, D. Y. H. attacks the sufficiency of the evidence as to the elements of OCGA § 15-11-81. Under OCGA § 15-11-81 (a),

> a juvenile court deciding whether to terminate a parent's rights employs a two-prong test, first determining whether there is clear and convincing evidence of parental misconduct or inability. A finding of parental misconduct or inability must rest on clear and convincing evidence showing: 1) that the child is deprived; 2) that the cause of the deprivation is a lack of proper parental care or control; 3) that the cause of the deprivation is likely to continue or will not likely be remedied; and 4) that the continued deprivation is likely to cause physical, mental, emotional, or moral harm to the child. OCGA § 15-11-81 (b) (4) (A).

(Punctuation omitted.) *In the Interest of J. M. B.*, supra at 876. See also *In the Interest of R. N.*, 224 Ga. App. 202 (480 SE2d 243) (1997). If the first prong is met, then the trial court must consider whether termination of parental rights is in the best interests of the children, after considering the children's "physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home. OCGA § 15-11-81 (a)." *In the Interest of N. B.*, 239 Ga. App. 336, 337 (521 SE2d 47) (1999).

1. In this case, deprivation was established by the trial court's order in 1992, which was repeatedly extended and was not appealed by D. Y. H. See OCGA §§ 15-11-2 (8) (A); 15-11-81 (b) (4) (A) (i). D. Y. H. is, therefore, bound to such findings. *In the Interest of J. M. B.*, supra at 878 (1) (a). Further, it is undisputed that, at the time the children were first taken away from her in 1992, D. Y. H. was addicted to illegal drugs and unable to care for the children. See

---

[1] The State also sought to terminate any rights of the biological fathers of C. L. Y. and D. M. H. on the basis that they failed to legitimate their children.

OCGA § 15-11-81 (b) (4) (B) (ii). As such, the children were deprived in 1992.

Although the children were returned to D. Y. H. briefly in 1996, DFACS removed the children again in March 1997. As such, between 1992 and 1999, D. Y. H. has had custody of the children for less than a year. When determining whether children are deprived, i.e., without proper parental care and control, when the children are not in the custody of the parent who is the subject of the termination proceeding,

> the court shall consider, without being limited to, whether the parent without justifiable cause has failed significantly for a period of one year or longer prior to the filing of the petition for termination of parental rights: (i) [t]o develop and maintain a parental bond with the child in a meaningful, supportive manner; (ii) [t]o provide for the care and support of the child as required by law or judicial decree; and (iii) [t]o comply with a court ordered plan designed to reunite the child with the parent or parents.

OCGA § 15-11-81 (b) (4) (C) (i)-(iii).[2]

To this end, it is undisputed that D. Y. H. has seen C. L. Y. only once since August 1997, one year before the termination petition was filed. Her last visit with E. P. H. or D. M. H. was also in August 1997. Such limited contact clearly does not demonstrate an effort to "develop and maintain a parental bond with the [children] in a meaningful, supportive manner." OCGA § 15-11-81 (b) (4) (C) (i). In fact, as the trial court found, "[t]his historical lack of contact with the children shows a serious disinterest in the welfare and development of the children."

In addition, the evidence further supported the finding that the children were without parental care and control by demonstrating that D. Y. H. did not pay any child support or comply with the reunification plans. As such, clear and convincing evidence supported a finding that the children were deprived and that such deprivation was caused by D. Y. H.

2. Contrary to D. Y. H.'s contentions, the trial court found that the deprivation was likely to continue and will not be remedied.

Judging the credibility of [D. Y. H.'s] good intentions was a

---

[2] During the 1999 legislative session, the Georgia General Assembly changed the termination standard, so that a parent must do more than engage in minimal communication to avoid termination under OCGA § 15-11-81 (b) (4) (C) (i). See Ga. L. 1999, p. 252, § 1. Instead, they must "develop and maintain a parental bond in a meaningful, supportive manner." Id.

task for the juvenile court. The decision as to [the children's] future must rest on more than positive promises which are contrary to negative past fact. Further, this Court has held that the trial court must determine whether a parent's conduct warrants hope of rehabilitation, not an appellate court.

(Citations and punctuation omitted.) *In the Interest of C. D. P.*, 238 Ga. App. 393, 395 (519 SE2d 37) (1999). See also *In the Interest of R. N.*, supra at 205. The trial court's finding is supported by clear and convincing evidence in the record.

3. Finally, D. Y. H. contends that the evidence failed to establish that the termination of her parental rights was in the best interests of the children. However, "[t]he same evidence showing parental misconduct or inability may, and here does, establish this requirement." (Citations and punctuation omitted.) *In the Interest of J. M. B.*, supra at 879 (2). D. Y. H.'s current living situation, which she admits cannot accommodate all three children, coupled with her longstanding inability or refusal to comply with reunification plans or bond with her children, supports a finding that termination is in the best interests of the children.

Further, the DFACS caseworker testified that all three children had very good prospects for permanent placement with different families. To paraphrase the DFACS caseworker, it would be tragic to require the children to spend several more years in foster care when permanent placements are available.

There was no error.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED JANUARY 21, 2000.

*Bobby G. Adkins, Jr.*, for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Assistant Attorney General, Cheeley & King, John P. Cheeley, Sanders B. Deen*, for appellee.