A94A1373, A94A1374. IN THE INTEREST OF A. S. M., a child.
(448 SE2d 703)

BEASLEY, Presiding Judge.

The Bartow County Department of Family & Children Services (DFACS) filed a petition to terminate the rights of the parents to their minor child. The father contends (Case No. A94A1373) that the court erred in admitting the expert testimony of a social worker, who based her opinions, at least in part, on hearsay from a psychologist, who did not testify at trial. The mother contends (Case No. A94A1374) that the evidence presented was insufficient to establish by the appropriate standard that a termination of her parental rights was warranted.

In May 1990, the parents were involved in a contested divorce proceeding, and the court awarded temporary custody of their child to DFACS. The court-ordered investigations of the parents' homes resulted in neither home being approved for placement of the child. The divorce proceeding was dismissed after the parties apparently reconciled. The court declined to return custody of the child to either parent and transferred the issue of custody to the juvenile court.

In January 1991, the juvenile court issued a consent order finding that the child was deprived as contemplated by OCGA § 15-11-2 (8) (A) and awarding temporary custody to DFACS. In the order, the court outlined a case plan designed to reunite the child and her mother, with visitation by the father. It required each parent to attend Alcoholics Anonymous at least once a week; attend counseling

and/or group therapy as arranged or approved by DFACS; attend such parenting classes as recommended by DFACS; maintain a suitable home fit for occupation by the child; maintain steady employment; refrain from alcohol abuse; submit to random home visits by a representative of DFACS; and visit the child regularly. In addition, the mother was required to submit to random drug and alcohol screens requested by DFACS, refrain from the use of illegal substances, have no live-in male companions nor any overnight male guests to whom she was not married, and pay child support in the amount of $5 per week while the child was in the custody of DFACS.

The matter came before the superior court for judicial review in August at the request of the Citizens Review Panel. Following a hearing, the court found that the parents had both failed substantially to comply with the case plan, which it somewhat altered. Additional home evaluations were ordered for each parent. Again, neither home was approved. The parents divorced in November and custody was awarded to the mother, subject to final determination by the juvenile court.

The following March, the court extended the January 1991 and September 1991 orders after finding that in intervening months, the mother, unlike the father, had failed to follow most of the case plan. The court also found that when the child came into the custody of DFACS in May 1990, at the age of two years and eight months, she was in diapers, cried for a bottle, and could not speak intelligibly. It took some time for the foster parents to get her head clean. At age 37 months, she was found to be the developmental equivalent of a 19-month-old. Many of her teeth were decayed and the top front four had to be extracted. She was provided with several crowns and was fitted with a partial bridge. At age 47 months, her developmental equivalent was that of a 46-month-old.

The court again found that the child was deprived, that the parents were unable to provide for her proper care and control, that her return to the home of either parent would be contrary to her welfare, and that custody should remain in DFACS. The reunification plan was continued and both parents were ordered to comply with its terms. The father was granted increased visitation due to his work toward compliance with the plan.

The next month, April 1992, the court entered an order stating that DFACS had filed a motion for "supervised visitation pending investigation," based upon allegations by the child that her father had sexually abused her after her foster mother noticed anal injuries while bathing her. DFACS requested that he submit to testing, to which he agreed, and the court granted the motion for supervised visitation.

The father was tested at the Highland Institute. The written report of the director, Deloris Roys, stated that the father had been

administered a battery of psychological tests and had scored in the deviant range on various of the test measures of sexual deviance. The report recommended that he undergo sex offender treatment.

Several months later, DFACS filed the present petition for termination of parental rights. At the hearing, DFACS called Roys as a witness. She testified that in her capacity as a master's-level licensed social worker, she administers tests to determine if the individuals tested have the characteristics of sex offenders. She does not interpret the tests. They are interpreted by Dr. Nichols, a licensed clinical psychologist. Roys acknowledged that all she knows about the interpretation of the tests is what she was told by Dr. Nichols, that by state law she is prohibited from interpreting the tests, that all she can do is give the results to the individual and make recommendations concerning treatment, and that these tests form part of the basis of her opinion. For these reasons, the father objected to her offering any testimony based on the tests as hearsay, since Dr. Nichols was not available for cross-examination. The court overruled the objection.

Roys also prepared a written report summarizing her conclusions based on the psychological tests she administered to the father. This report was admitted without objection after Roys gave her objected-to testimony in which she likewise stated her conclusions based on the tests.

The juvenile court entered separate orders terminating the father's and mother's parental rights. In the mother's order, the court stated that it had found by clear and convincing evidence that she had failed significantly for a period of one year or longer prior to the filing of the petition to comply with the court-ordered plan designed to reunify her with the child in that she failed: to attend AA at least once a week, to obtain counseling as directed, to attend parenting classes as directed, to maintain a suitable home fit for occupation by the child, to maintain steady employment, or to pay child support as directed. See OCGA § 15-11-81 (b) (4) (C) (ii) and (iii).

The court also found that the results of a psychological evaluation in April 1991 indicated that the mother had serious psychological problems, that she was probably in need of psychotropic medication, that she was in need of counseling which she did not obtain, and that a psychologist had testified that it was unlikely that without counseling she had gotten any better. The court proceeded to find that she suffers from a mental or emotional deficiency of such a nature as to make it highly unlikely that she could ever have custody of the child. See OCGA § 15-11-81 (b) (4) (B) (i).

The court found by clear and convincing evidence that the mother is responsible for the past physical, mental and emotional neglect of the child; that the child is a deprived child; that the lack of proper parental care or control by both her natural parents is the

cause of the child's status as deprived; that the cause of the child's deprivation is likely to continue and will not likely be remedied; that the continued deprivation of the child will cause or is likely to cause serious physical, mental, emotional or moral harm to the child; and, that after considering the physical, mental, emotional and moral condition and needs of this child including her need for a secure and stable home, termination of parental rights is in her best interest. See OCGA § 15-11-81 (a); (b) (4) (A) (i) through (iv); (b) (4) (B) (v).

In the father's order, the court found that, based on Roys' testimony, he had scored in the deviant range on various tests and had scored 26 on an empirically derived scale wherein a cut-off score of 15 or higher shows scoring similar to known child molesters. The court noted that Roys testified that even if the father obtained recommended treatment, he would never be "cured"; that in her opinion he was a danger to children; and that she would not recommend that he ever have sole custody of the child. Based primarily upon the Highland Institute evaluation, the court further found that the father has a medically verifiable deficiency of his mental or emotional health of such duration and nature as to render him unable to provide adequately for the physical, mental, emotional, and moral condition and needs of the child. See OCGA § 15-11-81 (b) (4) (B) (i), supra.

We turn to the legal issues.

1. As in *Brown v. State*, 206 Ga. App. 800 (427 SE2d 9) (1992), the testifying expert, Roys, based her opinion upon conclusions reached by a non-testifying expert, Nichols, who had interpreted psychological tests given to the defendant. In ruling on the issue, the court recited the applicable law and applied it as follows:

" '(The expert) may give an opinion based upon his own examination of a person, upon his observation of that person, or upon any state of facts, supported by some evidence in the case, which he assumes as true.' [Cit.] 'An expert may give an opinion upon the facts testified to by other witnesses, but not upon *their opinions*. A witness' opinion must be his own and he cannot act as a mere conduit for the opinions of others.' (Emphasis in original. Citations and punctuation omitted.) [Cits.] In [Brown], the opinion of the psychologist drawn from the test results was not a part of the record in the case, and it is clear the State's expert psychiatrist based his own opinion, at least in part, on the psychologist's opinion. [Cit.] To the extent the State's expert relied upon the opinion of another expert not before the court, his testimony was inadmissible hearsay without probative value even in the absence of an objection. [Cit.]" (Footnote omitted.) *Brown*, supra at 801-802.

The State's reliance on *Westbrook v. State*, 186 Ga. App. 493, 496 (2b) (368 SE2d 131) (1988), which was cited in *Brown*, is misplaced. *Westbrook* holds that where an expert personally observes

data collected by another, his opinion is not objectionable merely because it is based, in part, upon the other's findings. Roys' opinion was not based upon her personal observation of data collected by another. It was based upon another expert's interpretation of data collected by her.

The State's reliance on *King v. Browning*, 246 Ga. 46 (268 SE2d 653) (1980), cited in *Jones v. Ray*, 159 Ga. App. 734, 736 (4) (285 SE2d 42) (1981), is likewise misplaced. Citing as authority *State Hwy. Dept. v. Peters*, 121 Ga. App. 167, 169 (1) (173 SE2d 253) (1970), *King* does state that an expert may base his opinion on hearsay. However, *Peters* holds only that the opinion of an expert appraiser as to the value of land is not inadmissible because it is based on hearsay. *King* does not overrule the established rules applied in *Brown*.

The opinion evidence based on hearsay concerned the critical issue of the father's ability to serve as a parent. It is evident that the court relied on this evidence in resolving this issue. As in *Brown*, we cannot say the erroneous admission of this evidence was harmless. Nor can we conclude that the error in the court's consideration of it was waived by the father's failure to object to admission of the report after objecting to the admission of Roys' testimony. As noted in *Brown*, supra at 802, it was "without probative value even in the absence of an objection. [Cit.]" We must therefore reverse the termination of the father's parental rights and remand the case to the juvenile court for further proceedings not inconsistent herewith.

2. With respect to the mother's appeal, " 'the appropriate standard of appellate review in a case where a parent's rights to his child have been severed is "whether after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost." ' (Cits.)" *In the Interest of A. O. A.*, 172 Ga. App. 364, 365-366 (323 SE2d 208) (1984). The factfinding and weighing of evidence is to be done in the trial court under the clear and convincing evidence test. *In the Interest of A. T.*, 187 Ga. App. 299, 300 (1) (370 SE2d 48) (1988).

The mother argues that there was insufficient evidence to authorize a finding that she had significantly failed to comply with the court ordered reunification plan. To the contrary, the mother was only able to verify that she had gone to AA approximately fifteen times in the almost two years that this requirement had been in place. In November 1991 and August 1992, she met with two separate psychiatrists for interviews of .50 and 1.25 hours respectively, but she failed to appear for follow-up appointments. She was released from parenting classes because the instructor felt she was incapable of meeting her own needs much less the needs of a young child. She failed to pay child support as directed, even though she was only ordered to pay a rela-

tively nominal amount designed to evaluate her sincerity in seeking custody of the child. She did not begin to refit her home for occupation by the child until threatened with a termination of parental rights. She did not maintain steady employment, and her only explanation is that her prior jobs did not work out permanently.

The evidence authorized the court to find that the mother, without justifiable cause, failed significantly for a period of one year or longer prior to the filing of the termination petition to comply with the reunification plan and failed to provide for the support of the child as required by the plan. OCGA § 15-11-81 (b) (4) (C) (ii), (iii), supra. The court was also authorized to find a mental inability on the part of the mother to care for the child. *In the Interest of T. R. L.*, 162 Ga. App. 659, 660 (292 SE2d 518) (1982); OCGA § 15-11-81 (b) (4) (B) (i), supra.

The court did not err in terminating the mother's rights based upon the paramount importance of the welfare of the child. *In the Interest of T. R. G.*, 162 Ga. App. 177, 179 (290 SE2d 523) (1982); compare *Shover v. Dept. of Human Resources*, 155 Ga. App. 38, 40 (270 SE2d 462) (1980) (the State may not intercede simply because the child's lot is substandard and the mother has failed to live up to societal norms for productivity, morality, cleanliness and responsibility).

*Judgment reversed in Case No. A94A1373; judgment affirmed in Case No. A94A1374. Andrews and Johnson, JJ., concur.*

DECIDED AUGUST 15, 1994 —
RECONSIDERATION DENIED SEPTEMBER 20, 1994.

*S. Lester Tate III, Kelley A. Dial,* for appellants.
*Michael J. Bowers, Attorney General, William C. Joy, Senior Assistant Attorney General, Teresa E. Lazzaroni, Assistant Attorney General, Velma C. Tilley, Nelson & Bradley, Stephen R. Bradley,* for appellee.