A08A2374. NASH et al v. COMPASS BANK.
(676 SE2d 28)

ADAMS, Judge.

In 2004, Compass Bank loaned Nash Capital Corporation $3,500,000. To secure the debt, Nash Capital executed and delivered a deed to secure debt conveying to Compass a tract of Gwinnett County real property (the "Property"). Nash Capital defaulted on the loan, and on November 6, 2007, Compass conducted a foreclosure sale of the Property. Compass bought the Property for $2,600,000. Because Compass contended that the sale proceeds were less than the secured debt, Compass filed a report of sale and petition for

confirmation with the superior court. Following an evidentiary hearing, the trial court confirmed the sale. Nash Capital, and guarantors Benjamin P. Nash, Sr., and Benjamin P. Nash, Jr. (collectively, "Nash") appeal, and we affirm.

Nash contends that the trial court's order is not supported by the evidence. Specifically, Nash argues that Compass failed to show that the Property sold for true market value because Compass (a) relied on inadmissible hearsay to establish that value, and (b) Compass's appraiser applied certain irrelevant and unsupported expenses in calculating the Property's value. "The court shall require evidence to show the true market value of the property sold under the powers and shall not confirm the sale unless it is satisfied that the property so sold brought its true market value on such foreclosure sale." OCGA § 44-14-161. The trial court is the trier of fact in a confirmation proceeding, and an appellate court will not disturb its findings if there is any evidence to support them. See *Smith v. Great Southern Fed. Savings Bank*, 192 Ga. App. 386, 387 (3) (385 SE2d 1) (1989).

Compass presented the testimony of appraiser Pashia Shorter to establish the true market value of the Property, a proposed office park with three buildings currently on site, two of which had not been fully completed. According to Shorter, the prospective market value of the Property was $3,000,000. Shorter further testified that in order to find the "as-is" market value of the Property, she deducted $225,000 to account for the cost to complete the interiors of two buildings located on the Property and $176,832 to account for rent lost during the time the buildings would not be occupied. According to Shorter, the true market value of the Property on November 6, 2007 was $2,600,000.

Nash presented the testimony of Larry David Thomas, Sr., who conducted his own appraisal of the Property. Thomas testified that the market value of the Property on November 6, 2007 was $3,000,000 "upon completion at new condition." However, Thomas further testified that the costs to complete the work and repairs on the Property and to obtain final approval from the City of Berkeley Lake needed to be deducted from that amount to arrive at a true market value.

(a) Nash argues that Shorter's opinion testimony was inadmissible hearsay — and therefore without probative value even in the absence of an objection — because Shorter relied on an out-of-court expert. Nash points to Shorter's testimony that she calculated the Property's value using three different valuation methods: the sales comparison approach, the income approach, and the cost approach. These methods yielded three different results, and the values had to be reconciled. When asked whether her superior, Quentin Ball, did

YALE LAW LIBRARY

the reconciliation, Shorter responded that "[i]t was Mr. Ball mostly." Shorter further testified that she consulted with Ball in making those adjustments, and that it was a collaborative effort.

As a rule, a witness must give his or her own opinion and not act as a conduit for the opinions of others. See *Cantrell v. Northeast Ga. Med. Center*, 235 Ga. App. 365, 369-370 (4) (508 SE2d 716) (1998); *In the Interest of A. S. M.*, 214 Ga. App. 668, 671 (1) (448 SE2d 703) (1994); *Brown v. State*, 206 Ga. App. 800, 801-802 (427 SE2d 9) (1992). For example, a doctor may render her own opinion based on reading a textbook, but she cannot merely cite the opinion of the textbook, as that is hearsay. See *Cantrell*, 235 Ga. App. at 370 (4). In some cases, an expert's reliance on the opinion of an out-of-court expert may also cause the expert's testimony to be treated as hearsay. In *In the Interest of A. S. M.*, 214 Ga. App. at 671-672 (1), we determined that a licensed social worker's testimony based on psychological tests she administered to the father was hearsay. These tests were interpreted by a clinical psychologist who did not testify at trial. Id. at 670. The social worker was prohibited by State law from interpreting the tests and knew nothing about the interpretation other than what she was told by the psychologist. Id.

In contrast to *In the Interest of A. S. M.*, Shorter was personally involved in each step of the appraisal on which she opined, and Nash was able to cross-examine her at length about the reconciliation. Compare *Brown*, 206 Ga. App. at 801 ("the State's expert psychiatrist had no involvement in the administration of the tests by the psychologist"). Shorter was also accepted by Nash as an expert in the field of commercial real estate appraisal, and the evidence fails to show she was incompetent to perform the reconciliation. Shorter was asked to give her opinion as to the true market value of the property, and she gave her opinion of that value, not Ball's opinion. It follows that her testimony was not hearsay.

(b) Nash also challenges the deductions Shorter applied to the prospective value of the Property to arrive at its true market value on November 6, 2007. First, as to the $176,832 deducted for loss of rental income, Nash argues that this is a collateral expense analogous to closing costs and was not appropriate for consideration in the determination of true market value. We disagree.

"[M]arket value is the price which the property will bring when it is offered for sale by one who desires, but is not obliged, to sell it, and is bought by one who wishes to buy, but is not under a necessity to do so." (Citation, punctuation and emphasis omitted.) *Wheeler v. Coastal Bank*, 182 Ga. App. 112, 114 (1) (354 SE2d 694) (1987). That rental property fully occupied by paying tenants is worth more to a prospective buyer than if that property was not fully occupied by paying tenants is almost self-evident. Compare id. (evidence of

estimated closing costs not relevant to true market value). In any case, the relevance of the loss of rental income to market value is supported by the testimony of both Shorter and Nash's own expert, Thomas, who agreed that an appraiser could apply a discounted value to account for a holding or rent period. Thomas disagreed with Shorter as to how much value should be discounted, testifying that the length of the rent period used by Shorter was not justified by market conditions. The trial court was entitled, however, to accept Shorter's opinion over Thomas's. See *Smith*, 192 Ga. App. at 387 (3).

Secondly, Nash argues that Shorter improperly considered the cost to complete the buildings located on the Property. According to Shorter, she went through the buildings and made a list of things that needed to be finished, she accessed "Marshall & Swift," a construction cost manual, and reviewed ten construction budgets from office park projects in which the scope of the work was similar to what needed to be completed on the Property, and then she calculated a cost to complete of $225,000. Shorter was not, however, a construction expert, and Nash contends that only such an expert could determine the cost to complete the partially completed buildings, rendering Shorter's appraisal wholly incompetent. We disagree.

Shorter offered her opinion as an expert appraiser, and her testimony as to the basis for that opinion included her methodology for calculating the cost to complete the Property. While an appraiser might rely on a cost expert to estimate construction costs, see generally *BPI Constr. Co. v. Collective Fed. Savings &c. Assoc.*, 186 Ga. App. 324, 324-325 (367 SE2d 269) (1988), Nash fails to establish that the use of such an expert is the only acceptable method for an appraiser to employ. Nash's own expert used a method similar to Shorter's in his cost approach to valuing the Property, citing "Marshall Swift and in-house files" as his cost source.

> Although appellants present a serious challenge to the means by which the creditor's expert arrived at [her] opinion as to value, the expert provided the court with the basis for his opinions. As it appears that [her] opinion was not based on sheer speculation, an appellate court cannot second guess any methodology utilized to reach the opinion.

(Citation omitted.) *Marett Properties v. Centerbank Mtg. Co.*, 204 Ga. App. 265, 267 (419 SE2d 113) (1992). See *Wilson v. Prudential Indus. Properties*, 276 Ga. App. 180, 181-182 (622 SE2d 890) (2005) (although attacked as unsupported by the facts, appraiser demonstrated that the basis for her opinion amounted to more than sheer speculation). As there is some evidence to support the trial court's order, it must be affirmed. See *Smith*, supra.

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED MARCH 23, 2009.

*Richard J. Storrs*, for appellants.
*Holland & Knight, Sara L. Doyle, Allen A. Hendrick*, for appellee.