**Jacquelyn HOPKINS, Plaintiff,**

v.

**GSLS GA, LLC, Defendant.**

**Civil Action No. 1:13–CV–0162–AT.**

United States District Court,
N.D. Georgia.

Signed May 29, 2015.

Natalie R. Rowland, The Law Office of Natalie R. Rowland, Atlanta, GA, for Plaintiff.

Kyle Shigeyuki Kotake, Brock & Scott, PLLC, Atlanta, GA, for Defendant.

## ORDER

AMY TOTENBERG, District Judge.

This is an action brought pursuant to the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), in which Plaintiff Jacquelyn Hopkins alleges she was not sufficiently notified that her mortgage had been transferred to Defendant GSLS GA, LLC. All other claims in this action have been dismissed. On February 26, 2015, during the pretrial conference, the parties agreed to submit the case for decision on the record then before the Court, with limited supplemental briefing. This Order provides findings of fact and conclusions of law, disposing of the case, in conformity with Federal Rule of Civil Procedure 52(a).

## I. FACTS

Based on the evidence in the record, the Court makes the following findings of fact by a preponderance of the evidence pursuant to Federal Rule of Civil Procedure 52(a)(1)[1]:

In May of 2005, Plaintiff purchased a home in Lithonia, Georgia for over $100,000.00. To secure a note (the "Note") in an amount sufficient to purchase the home, Plaintiff executed a security deed (the "Security Deed") in favor of Mortgage Electronic Registration Systems, Inc., as

---

1. Under Rule 52(a), a plaintiff's burden of proof is the same as it would have been at trial. Accordingly, the Court must decide whether Plaintiff has met her burden by "by a preponderance of the evidence." *State Farm Mut. Auto. Ins. Co. v. Waaga,* 314 F.2d 343 (5th Cir.1963); *see also United States v. Gears,* 835 F.Supp. 1093, 1100 (N.D.Ind.1993) (using preponderance of the evidence standard in a Rule 52 trial on the papers); Hon. Morton Denlow (Ret.), Trial On The Papers: An Alternative to Cross-motions for Summary Judgment, http://www.ilnd.uscourts.gov/home/Judges/DENLOW/papers.htm (last visited May 7, 2015) (suggesting a trial on the papers might be appropriate for a TILA claim).

nominee for SouthStar Funding, LLC. (Doc. 20–4 at 1; Affidavit of Venessa Sanchez ¶ 7, Doc. 20–3.) The Security Deed was properly recorded in the deed records of DeKalb County, Georgia on June 9, 2005 at Book 17525, Page 172. (*Id.*)

Page 11 of the Security Deed states that the Note and Security Deed can be sold, which may result in a change "in the entity (known as the "Loan Servicer") that collects" payments due under the Note and Security Deed. (Doc. 1 at 24.) Just after that, the Security Deed reads, "There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer." (*Id.*)

On September 12, 2011, the Security Deed was assigned to Bank of New York Trust Company, NA, ("BoNY") and that assignment was recorded on September 20, 2011 at Book 22635, Page 541. (Doc. 20–4 at 25; Sanchez Aff. ¶ 9.) This case turns on what happened next. In particular, at issue is the sufficiency of the notice of GSLS's purchase of the Security Deed. As the future transfers and notices are somewhat confusing, the rest of the facts will be bullet-pointed in chronological order.

- **September 13, 2012**—Defendant GSLS purchases the Note and Security Deed from Residential Funding Company, LLC ("RFC"), (Sanchez Aff. ¶ 15), notwithstanding the fact that the Security Deed is still assigned to BoNY.

- **September 21, 2012**—SWE Homes, LP ("SWE") sends Plaintiff a "Notice of Assignment, Sale or Transfer of Servicing Rights" (the "Notice"). (Doc. 1 at 46.) The Notice states:

 You are hereby notified that the servicing of your mortgage loan; that is, the right to collect payments

from you, is being assigned, sold, or transferred from GMAC Mortgage, LLC [ ] ("GMAC"), to GSLS, LLC ("Lender"). [ ] The assignment, sale or transfer of the servicing of the mortgage loan does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan.

(*Id.*) The Notice goes on to explain that "the new servicer will be SWE Homes, LP," (*id.*), and it relays SWE's address and contact information. The Notice also states:

 Except in limited circumstances, the law requires that your present servicer send you this notice at least 15 days before the effective date of transfer, or at closing. Your new servicer must also send you this notice no later than 15 days after this effective date or at closing.

(*Id.*) The Notice is signed by a representative of SWE. (*Id.* at 49.)

- **October 12, 2012**—GSLS sends Plaintiff a letter (the "Letter") that opens with the sentence, "This letter is to advise you that your loan is in default." (Doc. 1 at 41.) The Letter is written on GSLS letterhead containing all of GSLS's contact information. Amidst all of the information about Plaintiff's loan being in default, how and when Plaintiff may cure the default, consequences of failure to cure the default, and avenues for disputing the default, the Letter states:

 Your loan is in default as a result of your breach of the terms of the note and/or security instrument originally held by SOUTHSTAR FUNDING, LLC subsequently assigned and now held by GSLS, LLC, a Georgia Limited Liability Company ("Creditor").

(*Id.*) The Letter closes with a paragraph that begins, "This letter is an attempt to collect a debt and any information obtained by virtue of it will be used for that purpose." (*Id.* at 43.) The Letter is signed by a representative of Defendant GSLS. (*Id.*)

- **November 7, 2012**—BoNY assigns the Security Deed to RFC. (Doc. 20–4 at 27; Sanchez Aff. ¶ 11.). RFC then immediately assigns the Security Deed to GSLS. (Doc. 20–4 at 29; Sanchez Aff. ¶ 13.)
- **December 4, 2012**—The BoNY assignment to RFC is recorded. (Doc. 20–4 at 27; Sanchez Aff. ¶ 11.) The RFC assignment to GSLS is recorded immediately thereafter. (Doc. 20–4 at 29; Sanchez Aff. ¶ 13.)
- **February 5, 2013**—Plaintiff's home is sold at foreclosure sale where it was purchased by Defendant GSLS for the high bid of $15,500. (Sanchez Aff. ¶ 16.)

## II. DISCUSSION

 TILA was designed to promote "the informed use of credit" and "to assure a meaningful disclosure of credit terms." 15 U.S.C. § 1601(a). At issue in this case is the requirement, under 15 U.S.C. § 1641(g), that a new owner or assignee of a mortgage loan inform the borrower that her creditor has changed. In particular, § 1641(g)(1) requires:

[N]ot later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including—

(A) the identity, address, telephone number of the new creditor;

(B) the date of transfer;

(C) how to reach an agent or party having authority to act on behalf of the new creditor;

(D) the location of the place where transfer of ownership of the debt is recorded; and

(E) any other relevant information regarding the new creditor.

Plaintiff argues that she did not receive sufficient notice of the September 13, 2012 sale of the Security Deed to GSLS. GSLS argues that when you combine certain pieces of information contained the "Notice of Assignment, Sale or Transfer *of Servicing Rights* " (emphasis added) with other pieces of information in the Letter *of default,* GSLS has substantially complied with TILA's disclosure requirements.[2] There are two aspects of Defendant's argument that the Court finds troubling.

First, Defendant presents no case law supporting its novel aggregation theory, nor could the Court locate any. Even if the Court were to accept—which it does

---

**2.** Defendant's defense to TILA liability based on its status as assignee, which was presented for the first time in Defendant's brief of issues to be presented at trial, will not be entertained. It would be manifestly unfair to permit Defendant to add a new complete defense to liability after Plaintiff not only waived a jury trial, not only waived a bench trial, but also consented to a trial on the papers with limited supplemental briefing. In addition, as this defense could be properly considered an affirmative defense, Defendant may be deemed to have waived the defense by not including it in its pleadings or in the pretrial order. *See Jackson v. Seaboard Coast Line R. Co.,* 678 F.2d 992, 1012 (11th Cir.1982) ("The failure to include an affirmative defense in the answer or have it included in the pre-trial order of the district court, which supersedes the pleadings, will normally result in waiver of the defense.") (citing with approval *Rachbach v. Cogswell,* 547 F.2d 502, 505 (10th Cir.1976) (statutory exemption from the operation of the TILA based on status as assignee must be plead as an affirmative defense)).

not—that § 1641(g) is satisfied when all of the required disclosures are embedded within two other disclosures, Defendant's notice is still insufficient. Nowhere in the Notice or the Letter is September 13, 2012 listed as the date of the sale of the Security Deed, as required under § 1641(g)(1)(B).

Second, Defendant's suggestion that the Court adjudge Defendant's compliance with § 1641(g) under the "substantial compliance" standard used by Georgia Courts of Appeals to determine the sufficiency of some aspects of a pre-foreclosure notice is misplaced. (Doc. 48 at 6–7.) One reason is dispositive: the Eleventh Circuit has dictated a very different standard for compliance with consumer protection statutes such as TILA:

> Even though we stated that strict compliance does not necessarily mean punctilious compliance, we went on to stress that this only means that courts should not "fly speck" the language of credit disclosures. [ ] We never stated nor intend to imply that it is unnecessary to make the disclosures in the proper technical form and in the proper locations on the contract, as mandated by the requirements of TILA and Regulation Z. Liability will flow from even minute deviations from requirements of the statute and Regulation Z.

*Shroder v. Suburban Coastal Corp.,* 729 F.2d 1371, 1380 (11th Cir.1984). Another reason is that even Georgia courts have declined to extend the "substantial compliance" doctrine to situations like the one presented here, i.e., when a creditor attempts, after the fact, to recharacterize one type of notice as another type of notice:

> CertusBank argues that we should construe the June 21 letter to substantially comply with the [pre-foreclosure notice] requirements of OCGA § 44–14–162.2(a). [ ] It is true that we have permitted substantial compliance with OCGA § 44–14–162.2(a) in a limited circumstance involving the requirement to provide certain contact information. *See TKW Partners v. Archer Capital Fund,* 302 Ga.App. 443, 445–446(1), 691 S.E.2d 300 (2010)[ ]. We decline to extend that holding to allow CertusBank, after the fact, to recharacterize its 'Initial Communication Letter' as a notice of the initiation of foreclosure proceedings.

*Peters v. CertusBank Nat. Ass'n,* 329 Ga. App. 29, 763 S.E.2d 498, 501 (2014).

Defendant's Notice of transfer of servicing rights and Letter of default do not satisfy TILA's mortgage transfer disclosure requirements. Accordingly, Plaintiff has met her burden of showing by a preponderance of the evidence that Defendant GSLS violated 15 U.S.C. § 1641(g).

## III. DAMAGES

Plaintiff seeks the maximum statutory damages under 15 U.S.C. § 1640(a)(2)(A)(iv): $4,000.00.[3] Plaintiff argues that Defendant could not have reasonably concluded that the notices sent complied with TILA's notice requirements, and asserts that Defendant's conduct in belatedly raising affirmative defenses has unnecessarily expanded the proceedings. The Court agrees.

The Court is also concerned about other statements by Defendant that are misleading or inaccurate. For example, Defendant asserts, in its Reply to the Brief of Issues to be Presented at Trial, that the "GSLS position has not changed—as it has in the past, it continues to argue that it

---

3. Defendant's Motion in Limine to exclude evidence of any actual damages [Doc. 38] is GRANTED NUNC PRO TUNC.

sent the required § 1641(g) notice to Plaintiff on September 21, 2012. . . ." (Doc. 48 at 4.) Defendant has never argued that before. Not in its Answer, not in summary judgment briefing, not in the objections to the Magistrate Judge's Report and Recommendation (which did not even mention the September 21 Notice), and not in the pretrial order. Indeed, Defendant paid so little attention to the September 21 Notice that Defendant did not even include the Notice in its exhibit list in the pretrial order.

The Court **AWARDS** the maximum statutory damages under 15 U.S.C. § 1640(a)(2)(A)(iv): $4,000.00.

## IV. ATTORNEY'S FEES

### A. Current Counsel

■ TILA authorizes the award of costs and attorney's fees to the prevailing plaintiff in a proceeding to enforce the disclosure provisions of § 1641(g). 15 U.S.C. § 1640(a)(3); *see also Harris v. Schonbrun,* 773 F.3d 1180, 1185 (11th Cir.2014) (noting that TILA provides for the automatic award of attorney's fees and costs to a prevailing borrower). Plaintiff's current counsel seeks $435.00 in costs and $7,825.00 in fees. Defendant does not object, so long as all of Plaintiff's counsel's time entries relied upon in calculating those fees relate to the prosecution of the TILA claim only (and not, for example, to the prosecution of the dismissed wrongful foreclosure claim).

At the pretrial conference, Plaintiff's counsel was advised by the Court that she was to include in her motion for fees only time related to prosecution of the TILA claim. Plaintiff's counsel does not mention anywhere in her motion for fees that she has not charged for any time spent on non-

TILA claims. Plaintiff does say, however, that she "exercised billing judgment and . . . omitted excessive and unreasonable time." (Doc. 44 at 3.) The Court finds that of the 31.3 total hours billed by Plaintiff's current counsel, there are 9 entries[4] that relate to work spent on *both* the TILA claim and the wrongful foreclosure claim. The time spent on those entries totals 5.6 hours. Considering that the majority of the work performed during those entries would have had to be done to prosecute the TILA claim only or was inextricably interwoven with both claims, the Court discounts Plaintiff's counsel's time by 2 hours. *See Circle Y Const., Inc. v. WRH Realty Servs., Inc.,* 427 Fed.Appx. 772, 777 (11th Cir.2011).

Accordingly, the Court **AWARDS** Plaintiff's current counsel:

- **$435.00 in costs** and
- $250.00/hr* (31.3–2 = 29.3 hours)= **$7,325.00 in fees.**

### B. Former Counsel

■ Plaintiff has submitted an affidavit stating that she paid her former counsel, Shari Amour Scales, a total of $5,000.00 to represent her from March 11, 2013 through July 11, 2014. (Affidavit of Jacquelyn Hopkins ¶ 4, Doc. 49–1.) Plaintiff has a receipt for the $2,600.00 retainer she paid to former counsel, but does not have a receipt for the $2,400.00 that she states she paid former counsel thereafter. (*Id.* ¶ 7.)

Defendant objects on two grounds. First, Defendant objects that Plaintiff does not have a receipt for the $2,400.00 in payments. Second, Defendant contends that the fees claimed are excessive. Defendant argues that there is virtually no mention of a TILA claim under § 1641(g)

---

**4.** The drafting and research on Sept. 6 and 7, the drafting on Oct. 1, and the drafting and

review on Oct. 3 and Nov. 6.

anywhere in the documents former counsel worked on, nor was such a claim discussed at mediation, nor was such a claim made in Plaintiff's original Complaint (Plaintiff's only filing on record when the retainer was paid). According to Defendant, "During the period former counsel was counsel of record for Plaintiff, the only prosecution of Plaintiff's § 1641(g) claim is one paragraph in an eight (8) page brief." (Doc. 51 at 4.)

■ Plaintiff has not submitted an itemized list of services that indicates the number of hours former counsel spent on each task or counsel's hourly rate. However, the Court can make this determination on the record as to fees. First, Plaintiff is entitled to recover fees for former counsel's work on a few identifiable tasks that reasonably were required to produce the partial successful outcome here. Specifically:

(1) The Court finds that 1 hour of counsel's time would have been reasonably spent in participating in the drafting of the Joint Preliminary Report and Discovery Plan.

(2) The Court finds that 4 hours of counsel's time would have been reasonably expended in reviewing Defendant's Motion for Summary Judgment, assembling and drafting a chronology of transactions in a context where these appear confusing and required clear presentation for the purpose of preserving Plaintiff's TILA and wrongful foreclosure claims. *See Circle Y*, 427 Fed.Appx. at 777.

(3) There is no other documentary basis in the record, given the absence of an affidavit that would support the Court's award of fees for time other than the above 5 hours.

(4) The Court takes judicial notice that Ms. Scales was admitted to the State Bar of Georgia on December 3, 2013. http://www.gabar.org/MemberSearch Detail.cfm?ID=NzczNjM3 Based on her years of experience at the time of this litigation and the Court's familiarity with prevailing attorney fee rates in the Atlanta community in a field that is not highly specialized, the Court finds that an hourly rate of at least $175 is reasonable. In this regard, the Court takes note that Defendant has not challenged Ms. Rowland's $250.00 hourly rate and that Ms. Rowland has approximately two years more experience than Ms. Scales.

(5) Accordingly, the Court **AWARDS** **$875.00 in fees** to be paid directly to Plaintiff, based on her provision of a receipt for fees already paid.

## V. CONCLUSION

Plaintiff has proven her TILA claim by a preponderance of the evidence. Judgment is **AWARDED** in Plaintiff's favor. The Court also **AWARDS** Plaintiff $4,000.00 in statutory damages, $435.00 in costs, $7,325.00 in fees for Plaintiff's current counsel, and $875.00 in fees Plaintiff has already paid to her former counsel, Ms. Scales. The Clerk is directed to enter judgment accordingly and close this case.