**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 2, 2017**

# In the Court of Appeals of Georgia

A17A0145. CONYERS 138, LLC et al. v. ONH1, LLC.

BETHEL, Judge.

Conyers 138, LLC, Glenn E. Murer, Thomas Kostensky, and Bradley Taratoot (the "Appellants") appeal from the trial court's order confirming the purchase of a certain property by ONH1, LLC, in a foreclosure sale under OCGA § 44-14-161. The Appellants argue on appeal that the trial court erred in confirming the foreclosure sale because, contrary to the trial court's conclusion that the property sold for its true market value, the evidence established instead that the foreclosed property sold for less than its true market value. However, because we find evidence in the record to support the trial court's ruling, we affirm.

OCGA § 44-14-161 (a) requires a creditor who purchases property in a foreclosure sale to obtain a court order confirming the sale of real property as a

condition of pursuing a deficiency judgment against the debtor. In order to confirm the sale, the court must hold a hearing and determine through the evidence presented that the property sold for its "true market value" and that the sale conformed to other procedural and notice requirements. OCGA § 44-14-161 (b), (c).

"The trial court is the trier of fact in a confirmation proceeding, and an appellate court will not disturb its findings if there is any evidence to support them." *Nash v. Compass Bank*, 296 Ga. App. 874, 875 (676 SE2d 28) (2009) (citation omitted). "[W]e do not determine witness credibility or weigh the evidence and we view the evidence in the light most favorable to the trial court's judgment." *Chamblee Hotels, LLC v. Chesterfield Mtg. Investors, Inc.,* 287 Ga. App. 342, 343 (651 SE2d 447) (2007) (footnote omitted).

So viewed, the record reveals that Conyers 138, LLC, executed and delivered to ONH1 a deed to secure debt and security agreement dated September 28, 2012 (the "Agreement") for a certain property which included a former retail space and a parking lot (the "Property"). Pursuant to the power of sale provision in the Agreement, ONH1 foreclosed on the Property in July 2015, selling the Property in a public auction for the sum of $1,745,000. ONH1 was the sole bidder for the Property.

ONH1 filed a petition for confirmation of the foreclosure sale soon after. The trial court held a hearing on the petition, at which it received testimony from the appraiser that had been hired by ONH1 to value the Property prior to the foreclosure sale. The appraiser testified that he had determined that the highest and best use of the Property was as raw, vacant land and that, in order to determine the value of the Property with that use, he had to consider the fair market value of the property, less the expected cost of demolishing the building on the Property. He testified that he determined the value of the land (as vacant) to be $2,510,000, with $765,000 deducted for demolition costs, for a total value of $1,745,000. This was the precise amount for which ONH1 purchased the Property at the foreclosure sale.

The appraiser testified that in order to determine the demolition costs for his appraisal, he requested a cost estimate from a local demolition company. The owner of the demolition company testified regarding the demolition estimate his company provided to the appraiser, noting that he calculated the estimate using the square footage of the building and parking lot from Google Earth.[1] From the Google Earth

---

[1] Google Earth is an online and mobile service provided by Alphabet, Inc.'s Google unit which allows users to view aerial images of locations around the globe at various levels of detail and magnification by querying an address, intersection, or place name. *See* https://www.google.com/earth.

images, he calculated the square footage of the building on the Property to be 160,000 square feet,[2] which included loading docks, overhangs, covered walkways, and covered loading docks in the curtilage of the building. He stated that he then considered additional factors such as costs for disposal, milling, equipment, trucking, labor overhead, and profit in providing a final estimate of the demolition costs. He testified that the estimate he provided was a fair bid for a demolition job of that size and character. He also noted that the figure he provided was a "rough" estimate which was expected to be within 10 percent above or below the actual cost of performing the demolition job.

The court issued a final order confirming the foreclosure sale of the Property. This appeal followed.

On appeal, the Appellants do not suggest that the appraiser's estimate of the Property's fair market value (before demolition costs) of $2,510,000 was without support. Rather, their appeal turns on whether evidence in the record supports the trial court's underlying determination that $765,000 is a fair estimate of the demolition

---

[2] The appraiser testified that the square footage of the building was 156,000 square feet, based on local property tax records and a physical measurement of the building that he conducted.

costs for the Property, such that the price paid at the foreclosure sale by ONH1, $1,745,000, is the true market value of the Property, as required by OCGA § 44-14-161 (b). We find such evidence in the record before us.

The Appellants argue that several statements made by the owner of the demolition company show his estimate of the demolition costs to be too high. However, these arguments are essentially attacks as to his credibility and the credibility of the appraiser who relied on the estimate. We note that "what value is, or may have been, is a question of fact to be resolved as others are. In so doing, the [trial judge] is the judge of the credibility of the witnesses and of the weight to be given to the evidence." *Fleming v. Fed. Land Bank of Columbia*, 148 Ga. App. 765, 766 (2) (252 SE2d 653) (1979). Thus, even though the Appellants question the demolition company's methodology for determining the square footage of the building and rely heavily on the owner's "admission" that the estimate he provided may deviate by as much as 10 percent from the actual cost of the demolition job, each of these points raised by the Appellants give rise to questions of fact that were properly before the trial court to consider and resolve. *See Chamblee Hotels*, 287 Ga. App. at 343-45. Therefore, as we find evidence in the record supporting the trial

court's determination that the price paid by ONH1 represented the true market value of the Property, we affirm the trial court's order confirming the foreclosure sale.

*Judgment affirmed. McFadden, P. J., and Branch, J., concur*.