## 74425. PRESTLEY MILL PROFESSIONAL CENTER, LTD. v. NATIONAL BANK OF GEORGIA.
### (358 SE2d 307)

BIRDSONG, Chief Judge.

Confirmation of Sale on Foreclosure. Prestley Mill Professional Center (Prestley) utilized National Bank of Georgia (NBG) to finance a real estate development project consisting of a small office park adjacent to a county hospital and specifically used as a medical professional office park. There were several office condominiums in the original design. Several had been completed and were in use at the time of the foreclosure in question. Two condominium units had been partially completed to include the exterior walls and roof. The interiors of the buildings were wholly incomplete with no finish and no flooring (dirt floors), and all construction apparently at a standstill because condominium sales were very slow or non-existent. A vacant lot had been set aside for subsequent construction of a third condominium but no construction had commenced upon that lot. The vacant lot, however, had been prepared for construction to include curbing, water and sewage available for connection when a building was ultimately constructed.

Prestley had executed a security deed to the premises to NBG. It is uncontested that the loan came into default and NBG exercised its right to foreclosure sale. At the sale, the bank presented the only bid for the property, at $86,000. NBG then moved for confirmation of the sale as having been made at the fair market value. The parties at the hearing did not contest the sale had been conducted procedurally in accordance with all the statutory requirements of a foreclosure sale. Prestley complained only that the knockdown price of $86,000 was not the fair market value. Both sides presented expert testimony as to their respective opinions as to market value. NBG presented evidence by an appraiser that the fair market value based upon comparables for completed units such as the foreclosed property was $80 per square foot. The two partially completed units were of different sizes and thus would command different prices. NBG's appraiser estimated that the two incomplete units were approximately 35 percent complete. The appraiser thus valued the two incomplete units at the completed price less 65 percent completion costs, totaling individually the separate costs to place the unit in a completed state. NBG's appraiser valued the vacant lot on the basis of other vacant lots in the area which had sold within the recent past. In arriving at the value of the vacant lot, the bank's appraiser did not add in the cost of the devel-

opment costs such as the curbing, sewage, water availability, etc. He did however consider the vacant lot was limited by being restricted to condominium use. There is no indication that the appraiser was not aware of those improvements or that he disregarded the improvements, only that the appraiser did not add those costs to the assumed value of the other comparables, which apparently were unimproved lots. The bank's appraiser however testified that considering all factors the fair market value of the vacant lot was $12,000. The total value of the two incomplete condominiums and the vacant lot was estimated by NBG's appraiser to be $86,000. A second witness called by the bank was a real estate broker familiar with the value of property in the county. While the broker did not appraise the property, he testified he was familiar with the property and with real estate values in the county. His testimony was in general in support of the bank's appraiser.

Prestley called its own appraiser who offered evidence that based upon a completed condominium the value was $80 per square foot (the same as the bank's appraisal). However, Prestley's expert estimated the two incomplete condominiums were approximately 45-50 percent complete. Thus his estimate of the value of the two incomplete units obviously was greater than the bank's appraiser. Additionally Prestley's appraiser added in the enhanced value of the vacant lot because of the improvements. The greatest discrepancy in the conflicting appraisals was in the value of the vacant lot. It was the opinion of Prestley's appraiser that the total value of the two incomplete units and the vacant lot was $152,300. The trial court as the trier of fact determined the bid by the bank was the fair market value and confirmed the sale. Prestley brings this appeal enumerating ten asserted trial errors. *Held*:

1. We commence our consideration of these enumerations in light of the ultimate purpose of a hearing to consider the confirmation of a foreclosure sale. The duty of the court is simply and solely to test the fairness of (1) the technical procedure of the actual sale and (2) to insure that the sale has brought at least the true market value of the property. *Jones v. Hamilton Mtg. Corp.*, 140 Ga. App. 490, 491 (231 SE2d 491).

As hereinbefore noted, the parties to this appeal are both in agreement that the technical procedures met all the requirements of the law. Thus the only issue for the trial court to resolve was whether the bid sale was at least equal to the true market value. In making that determination, the trial court sits as the trier of fact, and its findings and conclusions have the effect of a jury verdict. What value is, or may have been at the time of the sale, is a question of fact to be resolved as other questions of fact are resolved and in the trial court's resolution of that issue the court determines not only the admissibil-

ity of evidence relating to the issue but also the weight to be afforded the evidence admitted. See *American Century Mtg. Investors v. Strickland*, 138 Ga. App. 657, 661 (227 SE2d 460).

In this case, the trial court allowed NBG's appraiser to testify to the fair market value of the two buildings in their unfinished state and the general procedure used to arrive at that figure. The appraiser also gave his opinion as to the market value, in situ, of the vacant lot. A real estate broker was allowed to state, in comparison to other properties in the geographical area, his opinion as to fair market value of the property in issue. However when the appraiser for the owner, Prestley, sought to add development costs as a more accurate determinative factor of fair market value and Prestley sought to attack the credibility of the bank's appraiser by showing through cross-examination that the bank's appraiser had not given appropriate consideration to the development costs, the trial court adamantly refused to allow such cross-examination or affirmative evidence of developmental costs. The trial court allowed both appraisers to give their opinion as to fair market value and how they arrived at those figures and thus was aware of the spread of the value from $86,000 to $152,300. Thus the trial court accepted evidence relating to the only issue before it, the market value of the property at the time of the sale and whether the sale price was at least equal to such value.

2. Most of the enumerations of asserted error deal with the refusal to admit evidence and documents going to the developmental costs, either as to the best method to compute the percentage of completion of the two unfinished buildings or the availability of utilities and parking area, curbing, etc. as those items might enhance the value of the vacant lot. However, we recognize that a confirmation proceeding is extremely narrow in scope, and in this case is solely the evaluation of the real estate sold under the power of sale as of the date of the sale. *Jones v. Hamilton Mtg. Corp.*, supra.

3. We are not persuaded the trial court erred in refusing to consider that development costs necessarily contribute to fair market value. It is clear from the evidence presented that condominium sales were seriously depressed in the geographical area of the real estate. Thus as observed by the trial court, the only true consideration was what the properties would bring on the market and not what it had cost the developer to bring the property to its current state of development. Both appraisers were allowed to testify as to how they reached the 35 percent and 45 percent state of completion, respectively. What books they used or what standards they used could go solely to credibility. It is clear that in the administration of justice in this state as in most jurisdictions, the trial court determines the relevancy, materiality and general admissibility of evidence both on direct and cross-examination. Thus although evidence collateral to an

issue may throw some light on the main issue of a case, it is necessary that trial judges be vested with some latitude as to the admissibility of this type of evidence. *Ludwig v. J. J. Newberry Co.*, 78 Ga. App. 871 (2) (52 SE2d 485). This remains equally true where the relevancy of the questionable evidence pertains to matters in cross-examination. *Ellis v. Cameron &c. Co.*, 171 Ga. App. 211, 212 (319 SE2d 38). We find no abuse of discretion in this case.

4. Likewise, we find no error in the denial of Prestley's motion to strike the testimony of the real estate broker. Prestley argued that the broker was not an appraiser and thus could not legitimately form an opinion as to the value of the unfinished buildings nor the effect of site development upon the vacant lot. The broker clearly qualified as a broker who was familiar with real estate values in the community. As such he was qualified to give his opinion as to current market value. His lack of expertise as an appraiser or inability to appraise property went merely to the weight of his testimony and not the admissibility of his testimony. The court properly received the evidence and attached such weight to it as the court, as trier of fact, might deem appropriate.

5. Lastly considering the sufficiency of the evidence, the any evidence standard has been applied consistently in confirmation cases. See *Laird v. Phenix Fed. Savings &c. Assn.*, 161 Ga. App. 57 (289 SE2d 11). The evidence before the trial court afforded ample proof to support the finding by the trial court as to the true market value. *Alexander v. Weems*, 157 Ga. App. 507, 508 (3) (277 SE2d 793). The value found by the trial court was within the range of the evidence and fully supported. *Georgia Power Co. v. Redman*, 137 Ga. App. 427, 428 (224 SE2d 477). We find no error to the prejudice of appellant in any of the several asserted enumerations of error.

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED JUNE 1, 1987.

*David T. Emerson*, for appellant.
*Emory A. Schwall*, for appellee.