## A10A1610. MCBRYAR et al. v. BRANCH BANKING & TRUST COMPANY.

(700 SE2d 731)

MCMURRAY, Senior Appellate Judge.

Bruce and Kimberly McBryar appeal from the trial court's order confirming Branch Banking & Trust Company's ("BB&T") foreclosure sale of two pieces of real property owned by them. The McBryars argue that the confirmation order was improperly entered because: (1) the order failed to recite the process used by BB&T's appraiser to calculate the properties' true market value; and (2) the court erroneously relied on the testimony of BB&T's appraiser, who used improper methods to determine the true market value of the properties. For the reasons set forth below, we affirm.

In confirming a nonjudicial foreclosure sale, the trial court "shall require evidence to show the true market value of the property sold . . . and shall not confirm the sale unless it is satisfied that the property so sold brought its true market value."[1] OCGA § 44-14-161 (b). The trial court "sits as a trier of fact, and [its] findings and conclusions have the effect of a jury verdict. [It] hears the evidence and [its] findings based upon conflicting evidence should not be disturbed by a reviewing court if there is any evidence to support them." (Punctuation omitted.) *Blue Marlin Dev. v. Branch Banking & Trust Co.*, 302 Ga. App. 120, 122 (1) (690 SE2d 252) (2010).

> On appellate review, the test is not whether this [C]ourt would [accept the] expert appraisals [relied upon by the trial court] as the most reliable and accurate, but whether the record contains any evidence to support the findings of the trial court that the property brought its true market value at the foreclosure sale.

*Tarleton v. Griffin Fed. Sav. Bank*, 202 Ga. App. 454, 454 (1) (415 SE2d 4) (1992).

The record shows that BB&T held mortgages on two pieces of real property owned by the McBryars and on which the McBryars had begun construction of "spec homes," i.e., houses which they intended to offer for sale on the open market. After the McBryars defaulted on their loans, BB&T initiated foreclosure proceedings,

---

[1] " 'True market value' is used interchangeably with the term 'fair market value.' It is the price that the property will bring when it is offered for sale by one who is not obligated, but has the desire to sell it, and is bought by one who wishes to buy it, but is not under a necessity to do so." (Punctuation omitted.) *Wilson v. Prudential Indus. Properties*, 276 Ga. App. 180, 180 (1), n. 1 (622 SE2d 890) (2005).

during which it purchased both pieces of property. According to BB&T's expert appraiser, the purchase price for each of the properties was equal to its true market value.

On April 8, 2009, the trial court held a hearing on BB&T's petition to confirm the sale of these properties. At that hearing, BB&T's appraiser testified that she used two formulas to calculate the true market value of each property. First, she calculated the "subject to" value, representing the value of the property, including the home thereon, as if the home were "completed and ready to market for sale." Because the homes were incomplete, however, the appraiser then used the "subject to" value to calculate an "as is" value of the property, i.e., the value of the property including the incomplete home (or the home "as is"). The "as is" value was calculated by taking the "subject to" value, deducting the lot value, multiplying that number by the percentage completion of the spec home, adding the lot value back in, and subtracting ten percent.[2] The appraiser estimated the percentage completion of both spec homes by using a checklist[3] provided by BB&T, and used by BB&T to fund draws on construction loans. Based upon this testimony and the other evidence presented at the hearing, the trial court entered an order adopting the true market value as calculated by BB&T's expert appraiser, finding that BB&T had purchased the properties at their true market value, and granting BB&T's confirmation petition. The McBryars now appeal from that order.

1. The McBryars contend that the trial court's order was invalid because it failed to recite the method used by BB&T's appraiser to calculate the properties' true market value. We are unpersuaded.

A trial court is not required, in its order from a confirmation proceeding, to state the method used by the appraiser to determine a property's true market value. Rather, our precedent requires only that a confirmation order identify the basis for the trial court's findings that the property sold for its true market value. See *PSI Pneumatic Structures v. C & S Newnan Bank*, 159 Ga. App. 766 (285 SE2d 576) (1981). See also *Tarleton*, 202 Ga. App. at 454 (1). The trial court's order satisfied this requirement by including findings of fact that supported the conclusion that each of the properties sold for its true market value. Given that the trial court's factual findings

---

[2] BB&T estimated that this ten percent would be the amount it would cost the bank to hire a contractor to complete the homes.

[3] The checklist allocated different percentages to different components of a house, according to the amount that BB&T estimated a specific item contributed to the completion of the home. For example, BB&T estimated that the footings accounted for two percent of the total construction cost, whereas interior walls and ceilings accounted for six percent of the total cost.

were supported by at least some evidence, including the testimony of BB&T's appraiser, we must affirm the same. *Blue Marlin Dev.*, 302 Ga. App. at 122 (1).

2. The McBryars further contend that the trial court erred in relying on the testimony of BB&T's appraiser to find that the properties sold for their true market value. Specifically, the McBryars argue that BB&T's appraiser's calculation of true market value was flawed for three reasons.

(a) The McBryars first assert that BB&T's appraiser improperly calculated the "as is" value of the properties by deducting the cost of completing the homes from the "subject to" market value of the property. We disagree. The methodology used by BB&T's appraiser was correct under the reasoning of *Prestley Mill Professional Center v. Nat. Bank of Ga.*, 183 Ga. App. 161 (358 SE2d 307) (1987).

The question in *Prestley Mill* was whether the evidence supported the trial court's finding that the properties at issue in that case, which included two partially completed condominium units and a vacant lot, had sold for their true market value. In finding that the condominium units had sold for their true market value, the trial court in *Prestley Mill* relied upon the testimony of an appraiser, who had determined the true market value of the condominiums by calculating their value as completed and subtracting therefrom the cost to complete each unit. *Prestley Mill*, 183 Ga. App. at 161. On appeal, we affirmed the confirmation order, holding that "[t]he evidence before the trial court afforded ample proof to support [its] finding . . . as to the true market value." Id. at 163 (5).

The present case likewise involves partially completed homes. Based upon the reasoning of *Prestley Mill*, BB&T's appraiser in the instant case, in determining true market value, correctly deducted the cost to complete each of the homes from the "subject to" market value of the property, i.e., the market value with the homes completed. See also *Nash v. Compass Bank*, 296 Ga. App. 874, 877 (b) (676 SE2d 28) (2009) (in determining the true market value of property, the appraiser properly deducted the cost to complete partially constructed buildings located thereon from the market value of the property with the buildings completed).[4]

(b) The McBryars next assert that the trial court could not rely

---

[4] Arguing for a contrary result, the McBryars rely upon that part of *Prestley Mill* that addressed the trial court's finding as to the true market value of the vacant lot. In this regard, they point to our holding in *Prestley Mill* that the trial court properly excluded evidence of what it had cost the developer to improve the lot, noting "the only true consideration was what the properties would bring on the market and not what it had cost the developer to bring the property to its current state of development." *Prestley Mill*, 183 Ga. App. at 163 (3). That holding in *Prestley Mill*, however, is inapplicable here, since the two pieces of real property owned by the McBryars were not vacant lots.

on BB&T's appraiser's calculation of true market value because the appraiser testified that she did not know the actual cost of completing the construction. The appraiser did, however, testify as to her basis for estimating the cost of completion, explaining that she used BB&T's standard progress inspection report for that purpose. "While an appraiser might rely on a cost expert to estimate construction costs, [the McBryars] fail[ed] to establish that the use of such an expert is the only acceptable method for an appraiser to employ." (Citation omitted.) *Nash*, 296 Ga. App. at 877 (b). Thus, even though the McBryars now attempt to challenge

> the means by which [BB&T's] expert arrived at her opinion as to value, the expert provided the court with the basis for [her] opinions. As it appears that her opinion was not based on sheer speculation, an appellate court cannot second guess any methodology utilized to reach the opinion.

(Punctuation omitted.) Id. See also *Wilson v. Prudential Indus. Properties*, 276 Ga. App. 180, 181-182 (622 SE2d 890) (2005) (affirming confirmation order where, although attacked as unsupported by the facts, the appraiser demonstrated that the basis for her opinion amounted to more than sheer speculation).

(c) Lastly, the McBryars assert that the appraiser's calculation of true market value was invalid because, in determining the "subject to" value of one of the properties, the appraiser assumed that the home thereon was sound, even though there were cracks in the concrete foundation slab. But "error[,] to be reversible[,] must be harmful." *Tarleton*, 202 Ga. App. at 455 (2) (b). The appraiser's failure to take into account the defect in the foundation slab could only work to the McBryars' advantage. It would have resulted in a higher "subject to" value from which the cost to complete was deducted, and therefore would have resulted in a higher true market value. As such, we discern no basis for reversing the confirmation order.

3. BB&T's motion for the imposition of frivolous appeal sanctions against the McBryars and/or their counsel is hereby denied.

*Judgment affirmed. Barnes, P. J., concurs. Senior Appellate Judge G. Alan Blackburn concurs in judgment only.*

DECIDED SEPTEMBER 8, 2010.

*Joseph E. Willard, Jr.*, for appellants.

*Baker, Donelson, Bearman, Caldwell & Berkowitz, Richard B. Gossett, Sheri A. Fox*, for appellee.